ELMER MEDINA, Petitioner v. DIVISION OF SOCIAL SERVICES and DIVISION OF MEDICAL ASSISTANCE OF THE NORTH CAROLINA DEPARTMENT OF HEALTH and HUMAN SERVICES, Respondents

No. COA03-875

(Filed 20 July 2004)

**1. Administrative Law— standard of review—agency affirmation of denial of Medicaid**

The correct standard of review for appeal of an agency affirmation of the denial of Medicaid reimbursement for an illegal alien's leukemia treatment was that used in the appeal of civil cases in which the superior court sits without a jury. Findings supported by evidence are conclusive, and conclusions of law are reviewable de novo.

**2. Public Assistance— denial of Medicaid—illegal alien— leukemia treatments—findings insufficient**

An appeal of the denial of Medicaid benefits for treatment of an illegal alien's leukemia was remanded where the findings were not adequate to support the conclusion that the care and services for which respondent denied reimbursement were not for an emergency (illegal aliens receive coverage for emergencies only).

Appeal by petitioner from order entered 11 April 2003 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 March 2004.

*Ott Cone & Redpath, P.A., by Thomas E. Cone and Melanie M. Hamilton, for petitioner appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for respondent appellees.*

McCULLOUGH, Judge.

Petitioner Elmer Medina appeals the trial court's order affirming an agency's decision to deny Medicaid coverage. Petitioner is an alien who was not lawfully admitted to the United States. In December of 2000, petitioner suffered a one-day fever, and over the next two weeks, he became increasingly fatigued. On the morning of 29 December 2000, petitioner had a fainting spell and passed out. Petitioner went to an urgent care facility and was later admitted to the pediatric floor at Carolinas Medical Center in Charlotte, North Carolina. (CMC)

At that time, petitioner denied any symptoms of upper respiratory infection, nausea, vomiting, or diarrhea. However, doctors believed that petitioner was likely suffering from acute lymphoblastic leukemia. The results of a bone marrow biopsy confirmed this diagnosis, and petitioner began to receive chemotherapy.

On 5 January 2001, petitioner had a fever of 103.7 degrees. He was also suffering abdominal pain that was associated with acute pancreatitis resulting from the chemotherapy. After being treated in the intensive care unit, petitioner went back to the pediatric floor on 7 January 2001. On 10 January 2001, petitioner had an operative procedure to insert an infusion port because petitioner required chronic venous access for chemotherapy. He was discharged to go home on 13 January 2001, given prophylactic medications, and directed to follow up with his treating physician.

On 6 January 2001, petitioner submitted an application for Medicaid benefits to the Mecklenburg County Department of Social Services. Respondent Division of Medical Assistance approved Medicaid coverage for the care and services petitioner received on 29 December 2000 through 30 December 2000 and 5 January 2001 through 6 January 2001.

On 31 January 2001, petitioner received diagnostic tests. He was readmitted to CMC on 5 February 2001 for scheduled chemotherapy. He was instructed to contact his treating physician if he suffered any problems.

Petitioner underwent additional chemotherapy and diagnostic testing on 13 February 2001 on an outpatient basis. He was discharged to go home the following day and had no restrictions. Petitioner had other visits on 27 February 2001 and on 12 March 2001.

On 6 April 2001, petitioner submitted another application for Medicaid services after 13 January 2001. Respondent Division of Medical Assistance denied coverage based on its determination that the care petitioner received was no longer for the treatment of an emergency medical condition. Petitioner appealed this decision to respondent Division of Social Services, but the final agency affirmed the denial of benefits. Petitioner then sought judicial review of the final agency decision. A hearing took place on 20 March 2003, and the Honorable Jesse B. Caldwell, III, affirmed the agency's denial of Medicaid coverage after 13 January 2003.

Petitioner appeals. On appeal, petitioner argues that the trial court erred by determining that he was not eligible for Medicaid benefits after 13 January 2003. Because the trial court failed to make adequate findings of fact to support its conclusions of law, we reverse and remand the decision of the trial court.

### I. Standard of Review

[1] Codified at Chapter 150B of the North Carolina General Statutes, the North Carolina Administrative Procedure Act (APA), governs judicial review of administrative agency decisions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). Under N.C. Gen. Stat. § 150B-52 (2003), "[a] party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in G.S. 7A-27." The amended statute now provides two possibilities for the standard of review. *Id.* "In cases reviewed under G.S. 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence." *Id.* Otherwise, "[t]he scope of review to be applied by the appellate court under this section is the same as it is for other civil cases." *Id.*

The present case is not governed by N.C. Gen. Stat. § 150B-51(c) because that section addresses the situation in which an administra-

tive law judge makes a decision, but the agency declines to adopt that decision. In this case, the Division of Medical Assistance denied coverage for services after 13 January 2001, and the agency *affirmed* the denial of benefits. Therefore, the correct standard of review is the one used in other civil cases in which the superior court sits without a jury:

> [T]he standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial . . . are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citations omitted). Petitioner has not assigned error to any of the trial court's findings which are therefore binding on appeal. However, we review the disputed conclusions of law *de novo*.[1]

## II. Legal Background

[2] Medicaid is a federal program designed to provide health care funding for the needy. *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004). Under federal and state regulations, undocumented aliens or aliens who are not permanent residents under color of law are not entitled to full Medicaid coverage. *Id.* "The only exception to this exclusion in both the North Carolina rule and the federal regulations is that payment is authorized for medical 'care and services' that are necessary for the treatment of an emergency medical condition." *Id.* at 4, 589 S.E.2d at 919-20. In this case, petitioner is an undocumented alien who is not permanently living in the United States under color of law. Therefore, he is entitled to benefits only if his care was necessary for the treatment of an emergency medical condition.

In *Luna*, this Court outlined the definition of "emergency medical condition" under federal law:

---

1. This standard of review was also applied in a case that considered the same issue on appeal. *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 589 S.E.2d 917 (2004). In *Luna*, we considered "whether the Department correctly applied the law in determining that certain care and services did not constitute treatment for Petitioner's emergency medical condition." *Id.* at ——, 589 S.E.2d at 918.

The implementing federal regulation provides, however, that undocumented aliens are entitled to Medicaid coverage for emergency services required after the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the patient's health in serious jeopardy; (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ or part. A state Medicaid plan must conform to these requirements.

*Id.* at 4-5, 589 S.E.2d at 920 (citations omitted). Under the North Carolina rule, medical care is necessary for the treatment of an emergency condition if "[t]he alien requires the care and services after the sudden onset of a medical condition (including labor and delivery) that manifests itself by acute symptoms of sufficient severity (including severe pain)[.]" N.C. Admin. Code tit. 10A, r. 21B.0302 (Nov. 2003) (formerly N.C. Admin. Code tit. 10, r. 50B.0302 (June 2002)). These symptoms must be so severe that the absence of immediate medical attention could result in: (1) placing the patient's health in serious jeopardy, (2) serious impairment to bodily functions, or (3) serious dysfunction of any bodily organ or part. *Id.* With these principles in mind, we turn to consider the issue on appeal.

### III. Issue on Appeal

Petitioner submitted two applications for Medicaid. The first application was approved, and coverage was provided for services rendered 29 December 2000 through 30 December 2000 and 5 January 2001 through 6 January 2001. Therefore, the first application is not the subject of this appeal. Instead, the parties are disputing petitioner's second application. The issue is whether the services rendered after 13 January 2001 were for the treatment of an emergency medical condition.

We recognize that this is an evolving issue in North Carolina. Our appellate courts simply have not had the opportunity to consider cases like this one with great frequency. However, this Court has established that the trial court must make adequate findings of fact to support its conclusions of law. Luna, 162 N.C. App. at 4, 589 S.E.2d at 924. The rationale is that without sufficient findings, it is impossible to determine "whether coverage was proper or not." *Id.* at 9, 589 S.E.2d at 922. In *Luna,* we remanded the case and instructed the trial

court to make factual findings on the following issues before deciding the issue of coverage:

> (1) whether his condition was manifesting itself by acute symptoms, and (2) whether the absence of immediate medical treatment could reasonabl[y] be expected to place his health in serious jeopardy, or result in serious impairment to bodily functions or serious dysfunction of any bodily organ or part.

*Id.* at 13, 589 S.E.2d at 924-25.

In this case, the trial court made the following relevant findings of fact:

3. Petitioner was originally admitted to Carolinas Medical Center on December 29, 2000, and subsequently diagnosed as having acute lymphoblastic leukemia. Following the insertion of a central line for the administration of chemotherapy, a bone marrow aspirate and lumbar puncture, he was discharged home on January 13, 2001.

4. Subsequent admissions were for planned courses of chemotherapy.

5. An application for Medicaid was submitted on the Petitioner's behalf on April 6, 2001 to the Mecklenburg County Department of Social Services.

6. The Respondent determined that admissions covering December 29-30, 2000, and January 5-6, 2001, were for the treatment of an emergency medical condition and approved Medicaid coverage to reimburse Carolinas Medical Center for these periods.

7. The Respondent denied coverage for the admissions subsequent to January 13, 2001, upon its determination that these admissions were not for the treatment of an emergency medical condition.

The trial court also made the following pertinent conclusions of law:

3. Emergency medical conditions are limited to sudden, severe, short-lived illnesses (and injuries) that require immediate treatment to prevent further harm.

4. The care and services for which the Respondent denied Medicaid reimbursement were not for the treatment of an emergency medical condition.

5. The Respondent's final agency decision is consistent with controlling federal statutes and regulations; it is not in violation of constitutional provisions, nor does it exceed the statutory authority or jurisdiction of the agency.

6. The Respondent's final agency decision was made upon lawful procedure and is not affected by other error of law.

After carefully reviewing the decision in *Luna* and the findings of fact and conclusions of law in the present case, we are struck by the similarities between the two cases. Like the trial court in *Luna*, the trial court in the present case failed to show whether petitioner's condition was manifesting itself by acute symptoms. The trial court also failed to address whether the absence of immediate medical attention after 13 January 2001 could result in any of the consequences listed in the North Carolina rule (health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part). These are the key issues required by the regulation, and even if its conclusions of law were accurate, the trial court failed to make sufficient findings to support those conclusions.

Without adequate findings, we are unable to decide whether coverage was proper or not. Therefore, we vacate the conclusions of law, leave standing the findings of fact, and remand for further proceedings. On remand, the trial court should resolve the important factual issues mentioned above and then decide the legal issue of coverage.

Reversed and remanded.

Judges BRYANT and ELMORE concur.