HECTOR DIAZ, PETITIONER v. DIVISION OF SOCIAL SERVICES AND DIVISION OF MEDICAL ASSISTANCE, NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, RESPONDENT

No. COA03-1151

(Filed 7 September 2004)

**Public Assistance— Medicaid—undocumented alien—emergency medical condition**

The trial court did not err by allowing Medicaid coverage for the treatment of an emergency medical condition for petitioner who is a non-citizen of the United States and is not admitted for permanent residence or otherwise living in the United States under color of law, because: (1) petitioner's condition was mani-

DIAZ v. DIVISION OF SOC. SERVS.

[166 N.C. App. 209 (2004)]

festing itself by acute symptoms requiring immediate medical attention, and the diagnosis was acute lymphocytic leukemia; and (2) absent medical treatment in the form of chemotherapy, petitioner's health would have been placed in serious jeopardy and he would have died.

Appeal by respondent from judgment and order entered 23 May 2003 by Judge James W. Webb in Guilford County Superior Court. Heard in the Court of Appeals 20 May 2004.

*Ott Cone & Redpath, P.A., by Melanie M. Hamilton, for petitioner appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for respondent appellant.*

McCULLOUGH, Judge.

Respondent North Carolina Department of Health and Human Services, Division of Medical Assistance appeals the trial court's decision to allow Medicaid coverage for petitioner Hector Diaz. A brief summary of the facts follows.

Petitioner Hector Diaz is not a citizen of the United States and is not admitted for permanent residence or otherwise living in the United States under color of law. In October of 2000, petitioner began to suffer from sore throat, nausea, vomiting, bleeding gums, and increased lethargy. Biopsies later revealed that petitioner was suffering from acute lymphocytic leukemia.

On 25 October 2000, petitioner began chemotherapy treatments. Subsequently, petitioner went to the intensive care unit for treatment of an infection. He returned to the regular unit on 12 November 2000 and was discharged on 22 November 2000.

Petitioner returned to the hospital on 25 November 2000 and proceeded to the second module of treatment. He developed a fever on 10 December 2000 and received antibiotics. He was discharged on 15 December 2000. The plan was for him to return for another biopsy before being readmitted for the third module of treatment. Petitioner returned to the hospital from 5 January 2001 through 8 January 2001 for the third module of treatment. The next two admissions in January of 2001 proceeded with no problems. Petitioner was admitted again in February of 2001, and his final module began on 16 April 2001.

**DIAZ v. DIVISION OF SOC. SERVS.**

[166 N.C. App. 209 (2004)]

There were three separate applications for Medicaid that were submitted on behalf of petitioner. Respondent approved coverage for medical services rendered in October, November, and December of 2000 and again in March and May of 2001. Respondent denied Medicaid coverage for all other admissions. Following three separate hearings, respondent issued three final agency decisions affirming the denials of Medicaid coverage.

Petitioner sought judicial review through three separate petitions. The trial court entered a judgment and order reversing the final agency decision. It determined that petitioner was entitled to Medicaid coverage for the treatment of his emergency medical condition. This included the care he received beginning on 22 October 2000 and the services rendered under the standard course of medical treatment.

Respondent appeals. On appeal, respondent argues that the trial court erred by extending Medicaid benefits to petitioner for the treatment of an emergency medical condition. We disagree and affirm the decision of the trial court.

## I. Standard of Review

Chapter 150B of the North Carolina General Statutes addresses judicial review of administrative agency decisions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). Under N.C. Gen. Stat. § 150B-52 (2003), "[a] party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in G.S. 7A-27." This statute also notes that in cases that are not governed by N.C. Gen. Stat. § 150B-51(c), the standard of review is "the same as it is for other civil cases." *Id.*

Since this case is not governed by N.C. Gen. Stat. § 150B-51(c), the correct standard of review is the one used in other civil cases in which the superior court sits without a jury:

[T]he standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial . . . are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citations omitted). Petitioner has not assigned error to the findings of fact which are therefore binding on appeal. Our role is to determine whether the conclusions of law were proper in light of these facts.[1]

## II. Legal Background and Issue on Appeal

Medicaid is a federal program designed to provide health care funding for the needy. *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004). Under federal and state regulations, undocumented aliens or those who are not permanent residents under color of law may not receive full Medicaid coverage. *Id.* The sole exception to this exclusion in both the North Carolina rule and the federal regulations is that payment is authorized for medical care that is necessary for the treatment of an emergency medical condition. *Id.* at 4, 589 S.E.2d at 919-20. In this case, petitioner acknowledges that he is an undocumented alien who is not permanently living in the United States under color of law. Therefore, he is entitled to benefits only if his care was necessary for the treatment of an emergency medical condition.

The *Luna* Court described the definition of "emergency medical condition" under federal law:

> The implementing federal regulation provides, however, that undocumented aliens are entitled to Medicaid coverage for emergency services required after the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the patient's health in serious jeopardy; (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ or part. A state Medicaid plan must conform to these requirements.

---

1. We have applied this standard of review in two recent cases which considered the same issue. In *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 2, 589 S.E.2d 917, 918 (2004), we evaluated "whether the Department correctly applied the law in determining that certain care and services did not constitute treatment for Petitioner's emergency medical condition." Similarly, in *Medina v. Div. of Soc. Servs.*, — N.C. App. —, — S.E.2d — (No. COA03-875, filed 20 July 2004), the issue was whether certain medical services were for the treatment of an emergency medical condition. Therefore, there is a precedent for the standard of review which we employ today.

*Id.* at 4-5, 589 S.E.2d at 920 (citation omitted). In a subsequent case, we elaborated on what the term "emergency medical condition" means in North Carolina:

> Under the North Carolina rule, medical care is necessary for the treatment of an emergency condition if "[t]he alien requires the care and services after the sudden onset of a medical condition (including labor and delivery) that manifests itself by acute symptoms of sufficient severity (including severe pain)[.]" N.C. Admin. Code tit. 10A, r. 21B.0302 (Nov. 2003) (formerly N.C. Admin. Code tit. 10, r. 50B.0302 (June 2002)). These symptoms must be so severe that the absence of immediate medical attention could result in: (1) placing the patient's health in serious jeopardy, (2) serious impairment to bodily functions, or (3) serious dysfunction of any bodily organ or part. *Id.*

*Medina v. Div. of Soc. Servs.*, 165 N.C. App. 502, —— S.E.2d —— (No. COA03-875, filed 20 July 2004).

The decisions in *Luna* and *Medina* are important to the resolution of the present case because they considered whether certain medical services were for the treatment of an emergency medical condition. In *Luna*, we noted that the trial court did not make adequate findings of fact to support its conclusions of law. *Luna*, 162 N.C. App. at 13, 589 S.E.2d at 924-25. Ultimately, we remanded the case and instructed the trial court to make findings on the following issues before deciding the legal issue of coverage:

> (1) whether [petitioner's] condition was manifesting itself by acute symptoms, and (2) whether the absence of immediate medical treatment could reasonabl[y] be expected to place his health in serious jeopardy, or result in serious impairment to bodily functions or serious dysfunction of any bodily organ or part.

*Id.*

We reached the same result in *Medina*. There, the trial court "failed to show whether petitioner's condition was manifesting itself by acute symptoms." *Medina*, 165 N.C. App. at 508, —— S.E.2d at ——. The trial court also did not address "whether the absence of immediate medical attention" would "result in any of the consequences listed in the North Carolina rule (health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part)." *Id.* Therefore, we remanded the case for further findings. *Id.*

As we did in *Luna* and *Medina*, we must examine the findings of fact and conclusions of law. Here, the trial court made the following pertinent findings of fact:

2. Petitioner is not a citizen of the United States, nor is he admitted for permanent residence or otherwise permanently residing in the United States under color of law. The Petitioner does, however, meet all other eligibility criteria for Medicaid.

3. Petitioner was first seen at The Moses Cone Memorial Hospital on October 22, 2000. His symptoms included a one-week history of a sore throat, a four-day history of nausea and vomiting, decreased intake, bleeding gums and increasing lethargy. During the course of his 10/22/00 admission, Petitioner was diagnosed with acute lymphocytic leukemia ("ALL") and malnutrition, among other things.

4. Absent medical treatment in the form of chemotherapy, Petitioner's health would have been placed in serious jeopardy and he would have died.

5. The Petitioner received standard courses of treatment for his condition of ALL consisting of diagnostic services and several series of chemotherapy treatments.

6. The Petitioner's condition was an acute, life-threatening condition, not a chronic condition, and treatment was given accordingly.

7. The treatment received by the Petitioner was not ongoing treatment for a medical condition which was a chronic debilitating condition.

The trial court also made the following relevant conclusions of law:

3. As a "non-qualified alien," the Petitioner is only eligible for Medicaid coverage for care and services necessary for the treatment of an emergency medical condition.

4. The Petitioner was suffering from a medical condition in the form of a lethal cancer, acute lymphocytic leukemia ("ALL") when he [was] first presented to Moses Cone Memorial Hospital on 10/22/00.

5. Petitioner's presenting symptoms on 10/22/00 were acute symptoms of sufficient severity such that immediate medical attention was needed.

6. Petitioner's chemotherapy treatments, which were initiated during his October 22, 2000 admission under the standard medical protocol, began as soon as was medically feasible and therefore constituted immediate medical attention.

7. If Petitioner had not received immediate medical attention in the form of diagnostic tests and chemotherapy, his health would have been placed in serious jeopardy, and he would almost certainly have died.

\*\*\*\*

10. The Petitioner's continuing chemotherapy treatment under the standard medical course of treatment and medical protocol constituted medically necessary, appropriate and continuing treatment for the Petitioner's emergency medical condition.

11. The final agency decision applied improper legal standards in concluding that the treatment Petitioner received was not treatment for an emergency medical condition.

12. The final agency decision denying Medicaid coverage for the treatment the Petitioner received was based on an incorrect interpretation of the governing federal statute and regulation, and was, therefore, affected by error of law.

Based on these findings of fact and conclusions of law, the trial court reversed the agency and granted Medicaid coverage "for the Petitioner for treatment of his emergency medical condition[.]" This included all necessary care beginning on 22 October 2000 and encompassed all care under the standard medical course of treatment.

We believe that the trial court in the present case made the key factual findings that were lacking in *Luna* and *Medina*. Here, the trial court explained that petitioner's condition was manifesting itself by acute symptoms. Conclusion of law 5 mentioned that petitioner's symptoms on 22 October 2000 were "acute symptoms" that required "immediate medical attention." Similarly, finding of fact 3 identified what those symptoms were and stated that the diagnosis was acute lymphocytic leukemia.

Second, the trial court specified that the absence of immediate medical attention would result in the consequences listed in the North Carolina rule: health in serious jeopardy, serious impairment of bodily functions, or serious dysfunction of any bodily organ or part.

WOOD v. BD&A CONSTR., L.L.C.

[166 N.C. App. 216 (2004)]

In finding of fact 4, the trial court explained that "[a]bsent medical treatment in the form of chemotherapy, Petitioner's health would have been placed in serious jeopardy and he would have died."

Based on these findings, the trial court was correct in concluding that petitioner was entitled to Medicaid for the treatment of his emergency medical condition. The decision of the trial court is

Affirmed.

Judges HUDSON and LEVINSON concur.