MARIA D. MEZA, Petitioner, v. DIVISION OF SOCIAL SERVICES and DIVISION OF MEDICAL ASSISTANCE OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondents

No. COA07-407

(Filed 21 October 2008)

**Public Assistance— emergency Medicaid coverage—superior court review of agency decision—standard of review** ·

The superior court applied the correct standard of review in a case involving the extent of Medicaid coverage for emergency mental health treatment for a nonqualified alien, and its judgment and order were affirmed. The matter is controlled by N.C.G.S. § 108-79(k) and *Chatmon v. N.C. Department of Health and Human Services*, 175 N.C. App. 85, not the APA, and the superior court sits as both a trial court and an appellate court. The superior court engages in independent fact finding to determine whether the DHHS decision is consistent with state and federal law, but the trial court may not rehear the case, make wholly new findings, or determine that grounds not relied on by DHHS would justify the decision. The standard of review was not the basis of the appeal and was not addressed in *Diaz v. Division of Social Services*, 360 N.C. 384, and *Chatmon* remains controlling.

Judge Steelman dissenting.

Appeal by respondents from judgment and order entered 26 January 2007 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 October 2007.

*Ott Cone & Redpath, P.A., by Thomas E. Cone, for petitioner-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Brenda Eaddy, for respondents-appellants.*

**MEZA v. DIVISION OF SOC. SERVS.**

[193 N.C. App. 350 (2008)]

GEER, Judge.

Respondents, the North Carolina Department of Health and Human Services' Division of Social Services and Division of Medical Assistance (collectively "DHHS" or "the agency"), appeal from the superior court's decision reversing DHHS' final decisions regarding petitioner Maria D. Meza's entitlement to emergency Medicaid coverage as a non-qualified alien for two separate periods of medical treatment in the fall of 2004 and winter of 2005. On appeal, DHHS challenges the standard of review applied by the superior court. We hold, however, that the superior court properly applied N.C. Gen. Stat. § 108A-79(k) (2007), as construed by *Chatmon v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 85, 622 S.E.2d 684 (2005), *disc. review denied*, 360 N.C. 479 (2006), and, therefore, affirm the superior court's decision.

---

The facts in this case are essentially undisputed. Ms. Meza applied for Medicaid coverage through the Mecklenburg County Department of Social Services for her hospitalization for in-patient mental health treatment at the Behavioral Health Center, CMC-Randolph from 15 October 2004 to 29 October 2004. On 26 January 2005, the Division of Medical Assistance issued a notice of benefits awarding Medicaid coverage for the day of admission (15 October 2004), but denying coverage for the remainder of the hospitalization.

Ms. Meza was also admitted to the same facility a second time, from 17 January 2005 to 11 February 2005, for in-patient mental health care. On 13 May 2005, the Division of Medical Assistance issued its notice of benefits for this hospitalization, again awarding Medicaid coverage only for the day of admission.

On both occasions when Ms. Meza was admitted to the hospital, she was a "non-qualified alien," who could not receive Medicaid coverage unless her medical condition met the definition of an "emergency medical condition" under federal law. A "non-qualified alien" is "an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." 42 U.S.C. § 1396b(v)(1) (2007). The applicable federal law, 42 U.S.C. § 1396b(v)(3), defines "the term 'emergency medical condition' [to] mean[] a medical condition . . . manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(A) placing the patient's health in serious

jeopardy, (B) serious impairment to bodily functions, or (C) serious dysfunction of any bodily organ or part."

Ms. Meza appealed the Division's decisions denying her coverage, and on 14 July 2005, a DHHS hearing officer conducted a hearing on both determinations. On 26 August 2005, the hearing officer issued a separate decision as to each period of hospitalization.

With respect to the first hospitalization, the hearing officer found that upon admission, Ms. Meza was diagnosed as " 'acutely psy-chotic,' " with her husband reporting that she often wandered out of the house, forgot to change her clothes for several weeks at a time, threw food and clothing, and neglected her personal hygiene. The hearing officer further found that Ms. Meza's condition worsened to the extent that she was considered a danger to herself and forced medication was deemed necessary. According to the hearing officer, after 22 October 2004, Ms. Meza was no longer considered to be a danger to herself.

Based on these findings, the hearing officer concluded that from 15 October 2004 to 21 October 2004, Ms. Meza's medical con-dition required emergency medical services, and thus she was en-titled to Medicaid coverage for that period. With respect to the period of 22 October 2004 to 29 October 2004, the hearing officer concluded that Ms. Meza's condition had stabilized to the extent that she was no longer a danger to herself, and, therefore, "the remaining treatment was to cure the underlying illness." As a result, the hearing officer reversed the Division's decision in part and awarded Ms. Meza Medicaid coverage for her treatment from 15 October 2004 through 21 October 2004, but not from 22 October 2004 through 29 October 2004.

With respect to Ms. Meza's second hospitalization, the hearing officer found that she had been diagnosed with schizophrenia and that she was withdrawn, isolated, and suspicious and had feelings of persecution. The hearing officer concluded that Ms. Meza's condition did not qualify as "emergent" under the federal definition because her condition had stabilized following the initial day of admission. Based on this determination, the hearing officer affirmed the Division's de-cision awarding Medicaid coverage for the date of admission, 17 January 2005, only.[1]

---

1. We note that the hearing officer's second conclusion of law in the second deci-sion appears to be mistakenly taken from the first decision and is irrelevant to any review of the second decision.

The hearing officer's decisions constituted DHHS' final decisions. Pursuant to N.C. Gen. Stat. § 108A-79(k), Ms. Meza filed a petition for judicial review of the DHHS' decisions in Mecklenburg County Superior Court. Concluding that the case involved statutory interpretation and application of law to facts, the superior court reviewed DHHS' legal determinations de novo. The court concluded that DHHS had misinterpreted the controlling federal law and, consequently, had applied erroneous legal standards for determining whether the treatment Ms. Meza received was for a qualified medical emergency.

On review, the superior court found that at the time of each of Ms. Meza's hospital admissions:

Ms. Meza was in a severe psychotic state of sudden onset resulting from decompensation of her long-standing underlying illness. Throughout each [of her admissions], she demonstrated severe symptoms of psychosis, loss of touch with reality, paranoia and suspiciousness, internal distractions including delusions and hallucinations, gross disorganization, and inability to attend to basic needs such as eating, bathing, and grooming. Throughout most of both admissions, she was unable to talk or communicate in any meaningful manner with staff or her peers, and her judgment and insight were very limited. She refused medication during both admissions, and forced medication orders were required during each.

The court determined that Ms. Meza's condition "placed her health in serious jeopardy and could reasonably have been expected to result in either placing [her] in serious jeopardy or serious impairment to bodily functions or serious dysfunction of a bodily organ or part." The court further found that Ms. Meza's treatment was "required and given to stabilize her condition" and that "her condition was not stabilized until her discharge."

Based on its findings, the superior court concluded: (1) "[Ms. Meza]'s medical condition at each admission was an emergency medical condition as defined in 42 U.S.C. § 1396(v)(3)," and (2) "[Ms. Meza]'s treatment throughout each admission constituted immediate, medically necessary, and appropriate treatment for [her] emergency medical condition." The superior court reversed DHHS' decisions and ordered the Division to provide Ms. Meza with Medicaid coverage for the entirety of both hospitalizations. DHHS timely appealed to this Court.

Discussion

DHHS has limited its appeal to three assignments of error: (1) that "[t]he trial court erred in its *de novo* review of the decision of the Respondent agency"; (2) that "[t]he trial court erred when, after a *de novo* review of the decision of the Respondent agency, it made new findings of fact and conclusions of law inconsistent with the agency's findings and conclusions"; and (3) that "[t]he trial court erred when, after a *de novo* review of the decision of Respondent agency, it made independent findings of fact and conclusions of law inconsistent with finding[s] and conclusions of the agency which had not been excepted to." Each of these assignments of error relates to the standard of review applicable to a superior court's review of DHHS decisions regarding Medicaid coverage for treatment.

The applicable standard of review is set forth in N.C. Gen. Stat. § 108A-79(k), which provides in pertinent part:

Any applicant or recipient who is dissatisfied with the final decision of the Department [of Health and Human Services] may file . . . a petition for judicial review in superior court of the county from which the case arose. . . . The hearing shall be conducted according to the provisions of Article 4, Chapter 150B, of the North Carolina General Statutes. The court shall, on request, examine the evidence excluded at the hearing under G.S. 108A-79(e)(4) or G.S. 108A-79(i)(1) and if the evidence was improperly excluded, the court shall consider it. *Notwithstanding the foregoing provisions, the court may take testimony and examine into the facts of the case, including excluded evidence, to determine whether the final decision is in error under federal and State law, and under the rules and regulations of the Social Services Commission or the Department of Health and Human Services.* . . . Nothing in this subsection shall be construed to abrogate any rights that the county may have under Article 4 of Chapter 150B.

(Emphasis added.) In *Chatmon*, 175 N.C. App. at 90-91, 622 S.E.2d at 688-89, we specifically addressed the role of the superior court under § 108A-79(k).

This Court first noted the unusual posture of appeals under § 108-79(k): "[A]lthough a superior court is sitting in an appellate capacity when reviewing public assistance and social services decisions, the statute authorizes the superior court to engage in inde-

pendent fact-finding in order to determine whether the Department of Health and Human Services' final decision is consistent with state and federal law." *Id.* at 90, 622 S.E.2d at 688. As *Chatmon* explains, the task for the superior court under the statute is not to determine whether a DHHS decision "was warranted on any basis, but rather whether the [DHHS] decision, and the basis upon which it relied, was legally and factually justified." *Id.* "Accordingly, section 108A-79(k) requires the trial court to sit as both a trial and appellate court." *Id.* The Court then concluded:

> In order to give meaning to both functions, the trial court should be limited to determining whether the reason offered for the Department of Health and Human Services' decision . . . was factually and legally correct. Section 108A-79(k) should not be read to authorize the trial court to rehear the case, make wholly new factual findings, and determine that alternative grounds not relied upon by the Department of Health and Human Services would also justify the [decision].

*Id.* at 90-91, 622 S.E.2d at 688.

In this case, the superior court was required under § 108A-79(k) to determine whether the hearing officer's decisions regarding Ms. Meza's two hospitalizations were factually and legally correct. With respect to the first hospitalization, the officer determined that Ms. Meza's condition had stabilized as of 22 October 2004 and that, from that date on, "the absence of immediate medical attention would not be expected to result in placing [Ms. Meza]'s health in serious jeopardy, or serious impairment to bodily function or serious dysfunction to [any] bodily organ or part." Ms. Meza did not, according to the hearing officer, require emergency care, but rather "the remaining treatment was to cure the underlying illness." With respect to Ms. Meza's second hospitalization, the hearing officer determined: "From January 18, 2005, the absence of immediate medical attention would not be expected to result in placing [Ms. Meza]'s health in serious jeopardy, or serious impairment to bodily function or serious dysfunction to [any] bodily organ or part. [Ms. Meza]'s condition was stabilized and the remaining treatment was to cure the underlying illness. Her treatment no longer qualified as emergent under the federal definition."

In reviewing these decisions, the superior court proceeded as mandated by *Chatmon*: it addressed whether the hearing officer was factually and legally correct in making these findings and conclu-

sions. The superior court did not base its decision on some alternative ground, but rather concluded that the hearing officer had improperly determined that Ms. Meza's medical condition, for which she was hospitalized, did not constitute an emergency medical condition under applicable federal law from 22 October 2004 until 29 October 2004 and from 18 January 2005 until 11 February 2005.

While the trial court did make its own findings of fact, these findings were not wholly *independent* of those made by the hearing officer; nor did the trial court disregard the findings of the hearing officer. Rather, the trial court considered the same evidence and concluded that the hearing officer's findings were not factually and legally justified. Accordingly, the trial court modified the findings to bring them into compliance with the law. The modification to make them correct falls within the direction of *Chatmon* to "determin[e] whether the reason offered for the Department of Health and Human Services' decision . . . was factually and legally correct[,]" without "mak[ing] wholly new factual findings" or "determin[ing] that alternative grounds not relied upon . . . would also justify" the decision. 175 N.C. App. at 90-91, 622 S.E.2d at 688. The trial court used the same grounds; it just reached a different conclusion.

Although DHHS quotes from *Chatmon* at the beginning of its brief, it disregards *Chatmon* in discussing the superior court's order. DHHS does not explain in what way the superior court failed to comply with § 108A-79(k) or *Chatmon*. As the superior court limited its review of DHHS' two decisions to a determination regarding whether they were factually and legally correct, we hold that the court's order complies with § 108A-79(k) and *Chatmon*.

In arguing that the superior court's findings of fact were improper, DHHS has relied solely on cases decided under the Administrative Procedure Act ("APA"), N.C. Gen. Stat. §§ 150B-1 through 150B-52 (2007). N.C. Gen. Stat. § 108A-79(k) and *Chatmon*—not the APA—control with respect to this case. *See* N.C. Gen. Stat. § 150B-43 (2007) ("Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, *unless adequate procedure for judicial review is provided by another statute, in which case the review shall be under such other statute*." (emphasis added)).

The dissenting opinion suggests that *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 628 S.E.2d 1 (2006), overruled *Chatmon*. As correctly

pointed out by the dissent, *Diaz* "addressed the identical *substantive* question presented in the instant case," (emphasis added), which was: "This case requires determination of the scope of coverage and reimbursement for a nonqualifying alien's medical treatment under federal and North Carolina Medicaid law." 360 N.C. at 385, 628 S.E.2d at 2. Nevertheless, the *procedural* posture in *Diaz* differs significantly from that with which we are now faced. Although the trial court in *Diaz* had likewise found that the plaintiff's treatment was for an emergency medical condition, DHHS based its appeal to this Court in *Diaz* on the *substance* of the trial court's order—that is, the trial court's interpretation and application of the federal statute's definition of "emergency medical condition" to the treatment of the disease. The focus of *Diaz* was thus on the proper construction of 42 U.S.C. § 1396b(v), a question of law.

As such, the standard of review employed by the trial court in *Diaz* to reverse the DHHS decisions to deny coverage to the plaintiff was neither implicated nor discussed by the Supreme Court. Indeed, N.C. Gen. Stat. § 108A-79(k) and *Chatmon* were never even cited in the Supreme Court's opinion or the Court of Appeals' decision.[2] The Supreme Court's decision addressed only the question presented to it on appeal: whether the trial court had properly interpreted and applied the federal statute.

Since an improperly applied standard of review was not the basis of the DHHS appeal in *Diaz*, the Supreme Court did not address the question. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts, however, to create an appeal for an appellant."). Thus, the statement in *Diaz* that, "[i]n cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test[,]" 360 N.C. at 386, 628 S.E.2d at 2, does not explicitly apply to a case involving N.C. Gen. Stat. § 108A-79(k), as the Supreme Court did not consider that question.

Nothing in *Diaz* suggests that the Court intended to impose a whole record review with respect to findings of fact when such an approach is contrary to the plain language of the statute. The statute specifically authorizes the superior court to "take testimony and examine into the facts of the case," a method of review that cannot be

2. Notably, none of the briefs filed in the Supreme Court addressed the proper construction and application of N.C. Gen. Stat. § 108A-79(k) or the relevance of *Chatmon*.

reconciled with whole record review. It is telling that the Supreme Court did not itself apply the whole record test or even reference the findings of fact of either the hearing officer or the superior court judge. Rather, the Court applied the pertinent federal statute directly to the apparently uncontested evidence.

The timing of the *Chatmon* and *Diaz* decisions does not suggest that the latter *sub silentio* overruled the former. It is worth noting that on 6 April 2006, the day before the *Diaz* decision was handed down, the Supreme Court also denied discretionary review of this Court's decision in *Chatmon. See Chatmon v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 479 (2006). Given this time line, indicating that the Supreme Court was fully aware of the holding of *Chatmon* when it made its decision in *Diaz*, we cannot conclude that *Diaz* intended to overrule *Chatmon* without even addressing it.

In this case, contrary to the procedural posture of *Diaz*, DHHS has based its appeal solely on challenging the standard of review applied by the trial court to the hearing officer's decision. As the Supreme Court stated in *Diaz*, "[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." 360 N.C. at 387, 628 S.E.2d at 3. Simply put, we cannot rewrite § 108A-79(k) to conform it to review of other administrative decisions. As *Diaz* cannot be read as construing § 108A-79(k), and it never addresses *Chatmon, Chatmon* remains controlling. It is perhaps telling that DHHS in this case, although relying upon *Diaz* for the substantive law, does not suggest that *Diaz* in any way overruled *Chatmon*.

Alternatively, DHHS argues that the superior court lacked authority to make alternative findings because Ms. Meza's petition for judicial review did not set out any exceptions or objections to specific findings of fact in DHHS' decisions. Because DHHS cites no authority in support of this argument, we deem the assignment of error abandoned. *See* N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). *Cf. Cape Med. Transp., Inc. v. N.C. Dep't of Health & Human Servs.*, 162 N.C. App. 14, 22, 590 S.E.2d 8, 14 (2004) (holding that "consistent with section 150B-51(c) [of the APA], the trial court is permitted to make its own findings of fact, even though neither party objected to those findings" of the agency).

Finally, DHHS also challenges the superior court's determination as to whether DHHS' decision was legally correct. The superior court concluded that DHHS' final decisions involved the application of improper legal standards and were based on an incorrect interpretation of the governing federal statute and regulation. DHHS agreed in its brief to this Court that the issues presented by Ms. Meza to the superior court were questions of statutory construction and the application of the controlling law to the facts:

> The ultimate issue in Appellee's petition [for judicial review] is this[:] she wanted the superior court to determine that her entire stay was a Medicaid covered event. While the agency must apply the statutory language to the facts of the case, the determination as to whether an "emergency" has ended for Medicaid coverage purposes is a matter of statutory interpretation. If the agency applies the federal law and corresponding State code and caselaw, and appropriately appl[ies] these criteria to the specific facts of a case, the agency has acted correctly, and no error should flow from that decision.

DHHS, however, overlooks the standard of review governing such questions: statutory construction and the application of law to fact are questions of law that a reviewing court considers de novo. *See In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003) ("Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court."); *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980) ("Whether . . . statutory requirements have been met is a question of law, reviewable on appeal."). Thus, as to the issues identified by DHHS as raised below, the superior court properly conducted a de novo review to the extent it was functioning as an appellate court.[3]

We do not address the remaining contentions in DHHS' brief because they are not encompassed by any assignment of error. *See* N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to

---

3. We do not understand DHHS' argument that the superior court did not "engage in a true de novo review" of the agency's decisions under § 108A-79(k). In support of its contention, DHHS points to the fact that the superior court "cites the exact federal statutes as the agency and does not set out any error regarding the manner in which the agency identifies the applicable law." While the superior court and the hearing officer agreed on what was the controlling statute, the superior court concluded that the hearing officer erred in his application of that statute to the actual facts relating to Ms. Meza. In short, the superior court considered the proper construction and application of the statute de novo.

a consideration of those assignments of error set out in the record on appeal . . . ."). The merits of the superior court's decision are not properly before us because DHHS did not specifically assign error to any of the superior court's findings of fact or conclusions of law apart from DHHS' contentions regarding the standard of review. The findings of fact are, therefore, binding on appeal, and there are no "disputed conclusions of law" to review. *Medina v. Div. of Soc. Servs.*, 165 N.C. App. 502, 505, 598 S.E.2d 707, 709-10 (2004). Accordingly, we affirm the superior court's judgment and order.

Affirmed.

Judge WYNN concurs.

Judge STEELMAN dissents in a separate opinion.

STEELMAN, Judge, dissenting.

I must respectfully dissent from the majority opinion. That opinion is grounded entirely upon the concept that, under the provisions of N.C. Gen. Stat. § 108A-79(k), the trial court was completely free to disregard the findings of fact made by the Hearing Officer for the Department of Health and Human Services and make its own independent findings of fact. I disagree with this analysis for several reasons.

### Background

Contrary to the assertions of the majority opinion, there was sharply conflicting medical evidence presented to the hearing officer in this matter. The condition for which petitioner was hospitalized was not a new condition. She was hospitalized for this condition on several previous occasions, in 1999 or 2000, and again in 2002. Rather than returning to her country of origin and seeking treatment there, she remained in the United States. The episodes in October of 2004 and January of 2005 were triggered by petitioner's not taking any of the medications prescribed for her during her last hospitalization.

Dr. Benjamin reviewed petitioner's records and testified that, as to the first admission, there was no sudden onset of petitioner's condition. Rather he found it to be a chronic illness and that only the first day of admission fit into the emergent criteria. The report of Dr. Mehta was also in evidence. He opined that all of the care of petitioner on the first admission, from 15 October 2004 through 29

**MEZA v. DIVISION OF SOC. SERVS.**

[193 N.C. App. 350 (2008)]

October 2004, was necessary for the treatment of an "emergency medical condition as defined in the statute." The hearing officer found a middle ground position that the emergency condition existed from 15 October 2004 through 21 October 2004.

As to the second admission, 17 January 2005 to 11 February 2005, Dr. Benjamin concluded that petitioner's condition was not acute, but rather was chronic, and thus should not have been covered by Medicaid. Dr. DiNome disagreed, stating in his letter that the care of petitioner from 17 January 2005 to 11 February 2005 constituted a single course of treatment that was necessary for the treatment of "an emergency medical condition as defined in the statute." The hearing officer ruled that none of this hospitalization was covered by Medicaid.

There was thus a clear and distinct conflict in the expert testimony of the medical witnesses as to whether the treatment of petitioner was covered under the provisions of 42 U.S.C. 1396b. There is evidence in the record to support either the position of the hearing officer or that of Judge Evans. The questions then presented are: who should make the determinations of credibility and weight that will resolve the case; what was the appropriate standard of review for the superior court; and what is the appropriate standard of review for this Court.

### Standard of Review of Superior Court

The majority argues that the standard of review for the superior court under N.C. Gen. Stat. § 108A-79(k) is *de novo* and is controlled by this Court's decision in *Chatmon v. N.C. Dep't of Health & Human Servs.*, 175 N.C. App. 85, 622 S.E.2d 684 (2005), *disc. rev. denied*, 360 N.C. 479, —— S.E.2d —— (2006). The majority attempts to distinguish the express holding found in the Supreme Court decision of *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 628 S.E.2d 1 (2006). I refuse to so blithely dismiss the holding of our Supreme Court.

In *Diaz*, the first issue addressed was the appropriate standard of review for the courts in cases arising under the provisions of N.C. Gen. Stat. § 108A-79(k). The language used by the Supreme Court could not have been more clear and concise:

In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test. *See N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894-95 (2004).

*Id.* at 386, 628 S.E.2d at 2-3. It is for the Supreme Court and not the Court of Appeals to overrule decisions of our Supreme Court. *Dunn v. Pate,* 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993).

A whole record test review of findings of fact by an administrative agency is a deferential review. *Carroll,* 358 N.C. at 660, 599 S.E.2d at 895. If there is any evidence in the record to support the findings, they are binding on the courts, even though the courts, looking at the evidence anew, might reach a different result. *Id.* As noted above, there was evidence in the record supporting the hearing officer's findings and decision. The application of the whole record test in this case required that the trial court affirm the decision of the hearing officer.

## *Chatmon v. N.C. Department of Health & Human Services*

Even applying the tests set forth in *Chatmon* to the instant case, I believe that the majority has construed *Chatmon* far too liberally, and that a more restrictive interpretation of that case is appropriate. In *Chatmon,* this Court wrestled with the appropriate standard of review for the trial court under N.C. Gen. Stat. § 108A-79(k). The relevant portions of that statute state:

> The hearing shall be conducted according to the provisions of Article 4, Chapter 150B, of the North Carolina General Statutes. The court shall, on request, examine the evidence excluded at the hearing under G.S. 108A-79(e)(4) or G.S. 108A-79(i)(1) and if the evidence was improperly excluded, the court shall consider it. Notwithstanding the foregoing provisions, the court may take testimony and examine into the facts of the case, including excluded evidence, to determine whether the final decision is in error under federal and State law, and under the rules and regulations of the Social Services Commission or the Department of Health and Human Services.

N.C. Gen. Stat. § 108A-79(k) (2007). Aside from its reference to the Administrative Procedure Act ("APA"), the statute is silent as to the appropriate standard of review. *Chatmon* construed the provisions of N.C. Gen. Stat. § 108A-79(k), as follows:

> The task of the superior court in this case was not to determine whether a sanction was warranted on any basis, but rather whether the Department of Health and Human Services' decision, and the basis upon which it relied, was legally and factually justi-

fied. While section 108A-79(k) authorizes a trial court to take testimony and reexamine the facts, this authorization is only "to determine whether the final decision [of the Department of Health and Human Services] *is in error . . . ."* N.C. Gen. Stat. § 108A-79(k) (emphasis added). . . . Section 108A-79(k) should not be read to authorize the trial court to rehear the case, make wholly new factual findings, and determine that alternative grounds not relied upon by the Department of Health and Human Services would also justify the sanction.

*Id.* at 90-91, 622 S.E.2d at 688. *Chatmon* also recites the well-established two-pronged test that appellate courts must follow in administrative appeals under the APA. First, the court shall determine whether the trial court, sitting as an appellate court, applied the correct standard of review, and, second, whether the trial court properly applied that standard. *Id.* at 89, 622 S.E.2d at 688. Neither *Chatmon* nor N.C. Gen. Stat. § 108A-79(k) explicitly grants the superior court the authority to engage in *de novo* review of the administrative agency's findings.

In the instant case, the trial court did not hear any evidence that any party contended was improperly excluded, nor did it take any testimony. Thus, under *Chatmon,* its role was limited to whether the decision was "legally and factually justified." *Id.* at 90, 622 S.E.2d at 688. This is not what the trial court did in this case. Rather, the trial court, based upon the identical evidence before the hearing officer, made its own independent findings of fact and reached a different conclusion of law. This was in direct contravention of the holding in *Chatmon* stating that the trial court was not authorized "to rehear the case [and] make wholly new factual findings." *Id.* at 90-91, 622 S.E.2d at 688.

## Conclusion

In *Diaz,* our Supreme Court adopted the test set forth in *Greenery Rehabilitation Group v. Hammon,* 150 F.3d 226 (2d Cir. 1998), which utilized a "stabilization" construction of the provisions contained in 42 U.S.C. § 1396b(v)(3). Emergency medical conditions under the statute are to be "sudden, severe, and short-lived physical injuries or illnesses that require immediate treatment to prevent further harm." *Diaz* at 387-88, 628 S.E.2d at 4. The Supreme Court went on to state that "the role of the Court is not to sit as a super legislature and second-guess the balance struck by elected officials." *Id.* at 389, 628 S.E.2d at 5 (citing *State v. Bryant,* 359 N.C. 554, 555, 614

S.E.2d 479, 486 (2005)). Our courts are to defer in this matter to the policy adopted by the United States Congress.

I would hold that the trial court erroneously made new findings of fact in this case and applied the wrong standard of review. The decision of the trial court should be reversed.