TAZZIE F. BLACKWELL v. GRANVILLE COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 789SC201

(Filed 16 January 1979)

1. **Social Security and Public Welfare § 1— department's denial of old age assistance—de novo hearing by court proper**

Pursuant to the provisions of G.S. Chapter 108, the trial court could conduct a de novo hearing on plaintiff's appeal from defendant's· denial of her petition for special assistance for an aged adult.

2. **Social Security and Public Welfare § 1— special assistance for aged adult—assets previously distributed—sufficiency of evidence**

In an action to obtain special assistance for an aged adult, evidence was sufficient to support the trial court's finding that all but $3000 of plaintiff's assets had been distributed to her children in cash, and the court properly remanded the case to defendant Department of Social Services for further verification as to whether that $3000 should be included in plaintiff's reserve level and whether plaintiff "otherwise meets all the criteria of eligibility for Special Assistance to Aged Adults."

APPEAL by defendant from *Rousseau, Judge*. Judgment entered 6 October 1977, Superior Court, GRANVILLE County. Heard in the Court of Appeals 6 December 1978.

In January 1977 an application was made to the Granville County Department of Social Services for Special Assistance for an aged adult on behalf of plaintiff herein. The application was made by Yvonne Weeks, a daughter of plaintiff. That application was denied because the Department of Social Services was not

able to obtain an accounting satisfactory to it of $5,500 belonging to Tazzie Blackwell. The denial was appealed, pursuant to G.S. 108-44, to the Director of the Division of Social Services, State Department of Human Resources. The denial of the application was affirmed by decision dated 29 June 1977.

Plaintiff, under the provisions of G.S. 108-44(e), filed a petition in the Superior Court for a hearing. The Superior Court, after hearing testimony evidence of both parties, entered an order finding facts and concluding that the $5,500 had been distributed to plaintiff's children but that there had been no proper accounting for $3,000 allegedly retained by a son of plaintiff from proceeds of the sale of land. The court remanded the case to Granville County Department of Social Services "for further verification as to whether the $3,000.00 withheld by plaintiff's son, A. H. Blackwell, should be included in the plaintiff's reserve level and a determination as to whether the applicant otherwise meets all of the criteria of eligibility for Special Assistance to Aged Adults". Defendant appeals from the entry of this order.

*Allsbrook, Benton, Knott, Cranford & Whitaker, by Dwight L. Cranford, for plaintiff appellee.*

*Watkins, Finch & Hopper, by William L. Hopper, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant contends that the court erred as a matter of law in subjecting the Social Services' decision to de novo review and ignoring competent, relevant and substantial evidence which supported its decision to deny relief. We disagree.

G.S. 108-44(e) provides:

"Any appellant or county board of social services who is dissatisfied with the decision of the Secretary may file a petition within 30 days after receipt of written notice of such decision for a hearing in the Superior Court of Wake County or of the county from which the case arose. Such court shall set the matter for a hearing within 30 days after receipt of such petition and after reasonable written notice to the Department of Human Resources, the county board of social services, the board of county commissioners, and the ap-

pellant. The court may take testimony and examine into the facts of the case to determine whether the appellant is entitled to public assistance under federal and State law, and under the rules and regulations of the Social Services Commission. The court may affirm, reverse or modify the order of the Secretary."

The General Assembly has directed that when a petition is filed, the matter must be set for *hearing* within 30 days. Additionally the court "may take testimony and examine into the facts". Such review exceeds that under the "whole record" test advocated by defendant and available under the Administrative Procedure Act. G.S. 150A-51(5); *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977). The judicial review provisions of Article 4, Chapter 150A of the Administrative Procedure Act, clearly contemplate a limited scope of review upon the record of the proceedings below. Evidence is heard by the reviewing court only under unusual circumstances. G.S. 150A-50. Because the scope of review under G.S. 108-44(e) of the Social Services statute exceeds that under Article 4, Chapter 150A, the judicial review provisions of the Administrative Procedure Act are displaced by those under Chapter 108. *See* G.S. 150A-43, *Insurance Co. v. Ingram*, 34 N.C. App. 619, 240 S.E. 2d 460 (1977); *see also Jarrell v. Board of Adjustment*, 258 N.C. 476, 128 S.E. 2d 879 (1963). The trial court acted within its authority to determine de novo whether the appellant is entitled to public assistance.

[2]  Defendant next urges that the court erred in overturning the Department of Social Services' decision that plaintiff was ineligible to receive assistance. It is the position of defendant that no competent evidence was introduced that plaintiff had ever authorized anyone to dispose of some $31,000.

In order for a person to be eligible for Special Assistance, it must be shown that the applicant's "reserve level", consisting of cash and other qualified assets, does not exceed $1,000. The Director of Social Services for Granville County testified as follows: "In determining reserve levels we look at each case on a case by case basis but look for consistency. There is nothing in the manual of regulations that says we have got to do this or that, we have considerable leeway in arriving at a just and reasonable decision."

Mrs. Yvonne Weeks, daughter of plaintiff, testified that on 28 January 1977 she made the original application on behalf of her mother, the plaintiff, but the application was denied because of a dispute as to $5,500. She testified that the $5,500 which "is being disputed in this action" was given to the six children of her mother during August 1976 and the distribution was made by her husband Paul Weeks. She further testified that her mother had no assets or funds in January 1977 except what was in her bank account the amount of which was not known to the witness. She received $916 in cash and used it a "little at a time".

Mrs. Jane Blackwell Critcher's testimony was substantially the same as her sister's. Additionally, she testified that all the children were present when the money was distributed. Her $916 was used to pay notes at the bank and to help with living expenses, including the expenses of a son in college.

Another daughter, Mrs. Betty Vaughn, also testified that the $5500 was divided equally among the six children; that Paul Weeks gave out the money and did not ask for a receipt; that she gave her share to her three children.

Mrs. Gwendolyn Winston, another daughter, testified similarly. She said she did not deposit the money in her bank account but used it for various household expenses. She further testified that at that time her mother was in good health, was competent, and knew the extent of her property, her bank balance and where her funds were deposited. At the time of the hearing her mother was in a rest home in Henderson. She said, "We took her last money because she wanted us to have it and that's what we did, we took it." On cross-examination, Mrs. Winston testified that her one brother bought plaintiff's farm, the homeplace, consisting of about 30 acres for "somewhere around $15,000.00"; that "he kept back" $3,000 and turned the other $12,000 over to Paul Weeks for distribution. The brother also received his share of the $5500 in question.

Paul Weeks, Jr., testified that he was employed by Peoples Bank & Trust Company in Scotland Neck and had been for 21 years; that he is the son-in-law of the plaintiff; that he distributed the $5,500 in cash to the six children each receiving $916; that he notified the Department of Social Services that the money had been distributed. On cross-examination he testified that he had

checks for the sale of the farm and other cash and that he distributed about $26,000 by checks and the remainder in cash, mostly in hundred dollar bills; that he did not think it necessary in this case to take a receipt; that he realized that it was his mother-in-law's money and didn't really know the capacity in which he was acting on her behalf.

The Eligibility Specialist for the Granville County Department of Social Services testified that she took the application on 28 January 1977 from Mrs. Yvonne Weeks on behalf of plaintiff; that Mrs. Weeks told her that plaintiff's son had bought the farm for $12,000; that plaintiff had withdrawn money from Granville Savings and Loan in the amount of $8,000 and these funds were divided among the children; that she told Mrs. Weeks they would need verification and verbal verification would not be sufficient; that on 10 February 1978, she received verification from Planters National Bank that an additional $8,000 had been withdrawn; that she wrote Mr. Weeks asking how the money was divided and for proof that it was no longer available to plaintiff; that Mr. Weeks mailed her cancelled cashier's checks showing that $23,000 was divided among the children; that she discovered, after talking with the son that he paid $15,000 for the land; that there was about $8,500 that was not accounted for by cashier's checks; that she sent a statement to the son requesting information with respect to what he had paid and what he had kept but the statement was never returned; that she wrote Mr. Weeks setting out her figures and received a letter from him stating that the $5,500 had been distributed in cash; that she advised him that unless better justification was received the application would be denied; that in January 1977 plaintiff's bank account did not contain sufficient funds to exceed the reserve level.

The Director of Social Services testified that he felt that a banker should be able to provide receipts and that a bank would not reasonably be handling cash in such a manner; that he felt they could have verified the $3,000 but the $5,500 was becoming exceedingly difficult; that "if in fact Mrs. Blackwell gave away the $5500.00 in August of 1976, she would have been eligible in January 1977 for the assistance she applied for"; that he did not recall whether the issue of the $3,000 was raised at the earlier hearing but the $5,500 was adequate to back up the denial. He

further testified that the application was for Special Assistance for the Aged which is available to persons living in a rest home.

The court made findings of fact, and those pertinent are as follows:

"4. That in ascertaining the plaintiff's reserve level, Martha Livingston, an Eligibility Specialist employed by Granville Social Services, determined that the plaintiff had an initial reserve level of $31,864.36 and that $23,364.36 had been distributed amongst the six children of the plaintiff by plaintiff's son-in-law, Paul Weeks, and that said sum was accounted for in the form of Cashier's Checks, leaving a balance of $8,500.00 to be accounted for in the plaintiff's reserve level.

5. That the plaintiff received $15,000.00 from her son, A. D. Blackwell, for the purchase of 35 acres of land. Further that A. D. Blackwell remitted to Paul D. Weeks $12,000.00 of the purchase price, which was distributed amongst the plaintiff's other five children and apparently retained $3,000.00 which is unaccounted for."

"10. That Granville Social Services used reasonable effort in attempting to verify the plaintiff's reserve level.

11. That the $5,500.00 referred to in March 1, 1977 letter from Granville Social Services has been distributed amongst the six children of the plaintiff."

Based on his findings the court concluded that the $5,500 had been distributed in cash to the six children but the $3,000 allegedly retained by A. D. Blackwell had not been properly accounted for and remanded the case for further verification as to whether that $3,000 should be included in plaintiff's reserve level and whether plaintiff "otherwise meets all of the criteria of eligibility for Special Assistance to Aged Adults".

There is sufficient evidence to support the court's findings of fact. Defendant does not contend otherwise. We are of the opinion that the findings support the court's conclusions. The court expressed its concern over the situation disclosed by this record. We cannot help but share his concern. It is completely obvious that plaintiff had some $26,000 available for her care and support,

and this sum would have maintained her comfortably in a rest home or nursing home for some time. We can certainly understand that anyone would look more kindly upon the application for assistance by plaintiff's children, had those children used the money they accepted for themselves for their mother's care before applying for taxpayer assistance. A person is entitled to assistance if they have no more than $1,000 in assets in reserve. One who possesses great wealth can dispose of it to family and friends and become a ward of the county and State, cared for by funds furnished by the taxpayers. Nevertheless, regardless of the concern this case and others like it may generate, we did not make the rules nor can we change them. The result reached by the trial court must, therefore, be

Affirmed.

Judges ERWIN and MARTIN (Harry C.), concur.