GEORGE MILTON LACKEY v. N. C. DEPARTMENT OF HUMAN RESOURCES, DIVISION OF MEDICAL ASSISTANCE

No. 8110SC90

(Filed 6 October 1981)

1. **Social Security and Public Welfare § 1— medical care assistance programs—applicable scope of judicial review**

Article 2 of Chapter 108, which contains provisions for programs of public assistance, including medical assistance, gives the superior court judge the op-

tion of proceeding on the record developed at the agency hearing or developing his own factual record. As the judge in this case chose to proceed on the agency record and considering the similar thrust of Chapter 108 and G.S. 150A-51, the review standards of the Administrative Procedure Act, which contains a provision for appeal from the superior court to the appellate division, should be applied in this case.

**2. Social Security and Public Welfare § 2— medical assistance programs—burden of showing disability met**

In cases concerning medical assistance benefits (Medicaid) claimant has the initial burden of showing disability that would prevent him from engaging in his usual job; however, the burden then shifts to the agency to show that the claimant can work in other employment as defined under the Act. Therefore, where all the evidence showed petitioner to have been totally disabled for twelve consecutive months, and there was no evidence to the contrary, petitioner's claim for medical assistance should have been approved. 42 U.S.C.A. § 1382c(a)(3), 10 N.C. Administrative Code § 32C.0203, and § 20 C.F.R. 416.934.

APPEAL by petitioner from *Farmer, Judge.* Judgment entered in WAKE County Superior Court 20 October 1980. Heard in the Court of Appeals 2 September 1981.

Petitioner initiated this action by applying to the Iredell County Department of Social Services for Medical Care Assistance (Medicaid) benefits. Petitioner's application for forwarded by the County department to the Disability Determination Section of the N. C. Department of Human Resources, respondent herein. The Disability Determination Section recommended to the County Department that the application be denied. Upon denial by the County Department, petitioner appealed to N. C. Department of Human Resources (Department), Division of Medical Assistance (Division). Following a hearing, the Division denied petitioner's claim and petitioner then appealed to Wake County Superior Court. Following a hearing in the Superior Court, Judge Farmer entered an order denying petitioner's claim, and from that order petitioner has appealed to this Court.

*Turner, Enochs, Foster, Sparrow & Burnley, P.A., by Wendell H. Ott and B. J. Pearce for petitioner-appellant.*

*Henry T. Rosser, Assistant Attorney General, for defendant-appellee.*

WELLS, Judge.

[1]   At the outset, we note that we are confronted with an appeal from a decision of a State Administrative agency in which neither of the parties suggests in their briefs the applicable scope of judicial review. As our Supreme Court has repeatedly emphasized, this is a serious omission and deficiency in the appellate process, and it is essential that the parties present their contention as to the applicable scope of appellate review. *See Brooks v. Grading Co.*, 303 N.C. 573, 281 S.E. 2d 24 (1981); *In re appeal of Savings & Loan League*, 302 N.C. 458, 276 S.E. 2d 404 (1981); *State ex rel. Utilities Commission v. Bird Oil Co.*, 302 N.C. 14, 273 S.E. 2d 232 (1981). We must first, therefore, determine the appropriate scope of judicial review of an order of the Division of Medical Assistance of the N. C. Department of Human Resources. Our Supreme Court discussed the guidelines for determining the appropriate scope of judicial review for appeals from State Administrative Agencies in *Commissioner of Insurance v. Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547 (1980). *See also Brooks*, supra. There, the Court noted that G.S. 150A-43, a part of the N. C. Administrative Procedure Act (APA), provides that a party aggrieved by a final agency decision is entitled to judicial review of the decision under the APA unless adequate procedure for review is provided by some other statute.

Article 2 of Chapter 108 of the General Statutes contains provisions for programs of public assistance, including medical care assistance. G.S. 108-44, entitled Appeals, contains provisions for the right of appeal by an applicant for public assistance from a decision by the county board of Social Services to the Department of Human Resources, and from the Department to the Superior Court. G.S. 108-44, as it was worded at the time of petitioner's appeal, did not, however, contain any provision for appeal from the Superior Court to the appellate division. Effective July 1, 1978, G.S. 108-44 was amended to provide a more detailed appellate process, *see* the 1979 Supplement to Vol. 3A, Part 1 of the General Statutes, including a provision in G.S. 108-44(j), *inter alia*, that the hearings in the Superior Court shall be conducted in accordance with the provisions of the Administrative Procedures Act. The amended version of G.S. 108-44 does not, however, contain any provisions for appeal from the Superior Court to the appellate division. There are significant differences in the provisions

of the Administrative Procedures Act and G.S. 108-44 with respect to the basis of and scope of review by the Superior Court.[1] The Administrative Procedures Act imposes substantial limits on the powers of the Superior Court to expand the evidence and to conduct a *de novo* hearing. *See Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). In *Blackwell v. Dept. of Social Services,* 39 N.C. App. 437, 250 S.E. 2d 695 (1979), this Court held that the scope of review under G.S. 108-44(e) exceeds the scope provided under the Administrative Procedures Act and that the review provisions of the Act are displaced by those under Chapter 108. With modification, we agree. It is clear that the review provisions of Chapter 108, both the present and the former versions, give the Superior Court judge the option of proceeding on the record developed at the agency hearing or developing his own factual record. Judge Farmer chose to proceed on the agency record. Under such circumstances, and considering the similar thrust of the two statutes, we hold the review standards of the Administrative Procedures Act, G.S. 150A-51, should be applied in this case. Such a position is consistent with the present provisions of G.S. 108-44(j). *See Commissioner of Insurance v. Rate Bureau,* supra. Our review, therefore, will determine whether Judge Farmer's order comports with the requirements of G.S. 150A-51.

[2] Under the provisions of G.S. 150A-51, a reviewing court may reverse an agency decision if:

> "[t]he substantial rights of the petitioners may have been prejudiced because the agency findings inferences, conclusions, or decisions are:

*    *    *

---

1. The pertinent provisions are contained in G.S. 108-44(e), as follows:

(e) Any appellant or county board of social services who is dissatisfied with the decision of the Secretary may file a petition within 30 days after receipt of written notice of such decision for a hearing in the Superior Court of Wake County or of the county from which the case arose.

. . .

The court may take testimony and examine into the facts of the case to determine whether the appellant is entitled to public assistance under federal and State law, and under the rules and regulations of the Social Services Commission. The court may affirm, reverse or modify the order of the Secretary.

(4) Affected by . . . error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted. . . .

We hold that the decision of the Department of Human Resources was both affected by errors of law, and was unsupported by substantial evidence in view of the entire record as submitted and should be reversed.

Petitioner's evidence was as follows:

a. Iredell Memorial Hospital, Statesville, North Carolina: clinical summary, patient history, and operative report, all by T. V. Goode, III, M.D., showed that petitioner was admitted through emergency room on 6 May 1978, with a stab wound in the abdomen, and that on 7 May 1978, an exploratory laparotomy disclosed that the stab wound penetrated the liver, causing severe hemorrhage. A penrose drain was inserted in the wound.

b. Baptist Hospital, Winston-Salem, North Carolina: admission history dated 8 May 1978, by W. K. Braswell, M.D., showed diagnosis of stab wound to abdomen with liver laceration, possible diaphragmatic laceration, and a collection of blood in the right pleural cavity (right hemothorax).

c. Baptist Hospital: discharge summary dated 17 May 1978, by James Hutson, M. D., showed clearing of hemothorax, removal of penrose drain, and return of petitioner to care of Dr. Goode.

d. Baptist Hospital: admission history and physical, dated 1 June 1978, by Jon Kolkin, M.D. and Jesse Meredith, M.D. showed petitioner was bleeding from injury to his liver. Also showed two additional surgical operations to address problems associated with liver abcess and bleeding and to remove gallbladder.

. . .

f. Baptist Hospital: discharge summary, dated 21 July 1978, by Dr. Meredith, showed petitioner's in-hospital progress, and showed that petitioner was discharged with a healing biliary curtaneous fistula.

g. Baptist Hospital: discharge summary dated 8 August 1978, by Dr. Meredith, showed petitioner was re-admitted to Baptist on 31

July 1978 with traumatic biliary curtaneous fistula. This summary showed continuing problems with the fistula and that from the time of petitioner's initial admission to Iredell Memorial to the date of this admission, his weight had decreased from 130 lbs. to 95 lbs. At discharge, his weight was 100 lbs. The summary contained the statement that petitioner was admitted "for evaluation of his nutritional and failing status."

h. Baptist Hospital: diagnostic report requested by Iredell County Department of Social Services dated 7 August 1978 by Scott Chatham, M.D. This report showed petitioner continued to experience drainage of bile and pus from a large open wound in the abdomen, showed general atrophy of petitioner's bones, joints, and muscles, and that petitioner continued to require treatment. The prognosis indicated in this report was that it would be very difficult for petitioner to maintain nutrition because of loss of protein through the fistula. Dr. Chatham indicated that petitioner would be incapacitated for work for "probably greater than one year."

i. Summary of out-patient visits and evaluation by Dr. Meredith from 29 July 1978 through 6 March 1979 showed continued drainage of the fistula through 1 March 1979, with a clear drainage on 3 March 1979.

j. A letter from Dr. Meredith dated 22 January 1979, in which he stated that petitioner was totally disabled from 8 May 1978 to 22 January 1979.

k. Another letter from Dr. Meredith dated 6 July 1979, certifying that petitioner was totally disabled from 8 May 1978 to 26 June 1979.

l. A lengthy letter report by Dr. Meredith dated 15 August 1979 indicated that he had followed petitioner's progress on a regular out-patient basis, reviewed petitioner's history since 8 May 1978, and described his continued medical problems. The letter closed with the following comments.

In evaluating Mr. Lackey's disability, the primary disabling factors relate to the extensive management problems associated with the biliary fistula, and to a generally weakened and under-nourished physical condition produced by poor nutrition, associated with the fistula.

On January 22, 1979 and again on July 6, 1979, I certified that Mr. Lackey had been totally disabled from May. 5, 1978. In retrospect, I see no reason whatsoever to modify that opinion. For all practical purposes, Mr. Lackey has simply been unable to engage in any substantial physical activity.

He is currently doing well, and I consider his prognosis to be good. I do not think this man is permanently disabled, and I estimate that he will be released for light employment in the Fall of 1979.

Petitioner submitted other medical evidence for treatment and hospitalization subsequent to 15 August 1979, the date of Dr. Meredith's summary and evaluation, but we do not find consideration of such other evidence necessary to the resolution of the questions presented in this appeal.

Respondent Department produced no evidence to rebut petitioner's evidence. While the record does contain evaluations of petitioner's evidence by personnel employed in Department's Disability Evaluation Section, such evaluations are not evidence and cannot be used as such by the Department of Human Resources.

The order (Notice of Decision) of the Department denying petitioner's claim contained, *inter alia*, the following conclusions (labeled Reasons For Decision):

In order to be eligible for Aid to the Disabled Medical Assistance, an individual must be found disabled as determined by the Supplemental Security Income standards set forth in Section 2322 and 2372 of the Eligibility Manual, Part I, for Medical Assistance.

Under the above mentioned sections, disability is defined as a physical or mental impairment which prevents an individual from engaging in substantial gainful activity and which is expected to last for at least 12 months or is expected to result in death. Substantial activity by Social Security standards is defined as $230 or more per month.

Since the medical evidence does not show that your impairment has been or is expected to be of a disabling level of severity for twelve months, the Iredell County Department

of Social Services was correct in denying your request for Medical Assistance.

Judge Farmer's judgment included the following pertinent conclusion of law:

1. The Petitioner had the burden of proving that he had a medically determinable physical or mental impairment which had lasted or could be expected to last for a continuous period of at least twelve (12) months from May 5, 1978, the date of injury and, further, that the impairment prevented him from engaging in any activity during the entire twelve (12) month period which would produce earnings of at least $260 per month.

Petitioner brought his claim pursuant to applicable provisions of State and federal law. The Social Security Act (*see* 42 U.S.C.A. § 301 *et seq.*) provides for funding to the respective States which adopt programs consistent with the pertinent provisions of the Social Security Act to furnish medical assistance to disabled persons whose income or resources are insufficient to meet the cost of necessary medical services. The legislation implementing this program (Medicaid) in North Carolina is codified in Chapter 108 of the General Statutes. Additionally, both federal and state agencies have adopted regulations for the administration of the Medicaid program. Under these laws and regulations, the program in North Carolina is a shared responsibility between the local (county) Board of Social Services and the N. C. Department of Human Resources. The hearing process involves initial consideration at the county level and review at the State level. The key to petitioner's entitlement in this case is whether he was able to establish that he was disabled for a period of twelve consecutive months. The applicable federal definition of disability is housed in 42 U.S.C.A. § 1382c(a)(3) as follows:

"(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months . . .

"(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The thrust of the Department's order and the clear conclusion of Judge Farmer was that petitioner had the burden of showing not only that his physical impairment prevented him from engaging in his usual employment, but that he had the additional burden of showing that he was prevented from engaging in any employment which would produce earnings of either $230.00 or $260.00 per month.

Pertinent decisions of the federal courts indicate that petitioner's burden is not so heavy as the DHR and the trial court perceived. In *Wilson v. Califano*, 617 F. 2d 1050 (4th Cir. 1980), the 4th Circuit Court held that a claimant in Title II (old-age, survivors, and disability) cases has the initial burden of showing disability that would prevent him from engaging in his usual job. The burden then shifts to the agency to show that the claimant can work in other employment as defined under the Act. (42 U.S.C.A. § 1382c(a)(3), quoted earlier in our opinion). *See also Rossi v. Califano*, 602 F. 2d 55 (3rd Cir. 1979); *Taylor v. Weinberger*, 512 F. 2d 664 (4th Cir. 1975); *McDaniel v. Califano*, 446 F. Supp. 1080 (W.D.N.C. 1978).

Respondent argues that while the "old-age and survivors" program is supported by contributions from employed persons, Medicaid is a "welfare" program, so the burden of establishing

disability under Medicaid should be higher. He further argues that the decisions of the federal courts interpreting the term "disability" in old-age and survivors cases are not pertinent to Medicaid cases. We cannot agree. The section of the Social Security Act defining disability for Medicaid programs (§ 1382c(a)(3) ) is identical in wording to the section of the Act defining disability for old-age and survivors benefits (§ 423(d) ). The Medicaid program was not adopted as a part of the Act until October, 1972, some forty-two years following the enactment of the old-age and survivors program. During this time, the standard of disability in the Act had been the subject of numerous decisions of the federal courts which dealt with a claimant's burden of proof to show disability under the Social Security Act. These early decisions are consistent with the decisions in the post-1972 cases we have cited previously in this opinion. *See e.g. Celebrezze v. Bolas*, 316 F. 2d 498 (8th Cir. 1963); *Thomas v. Celebrezze*, 331 F. 2d 541 (4th Cir. 1964); *Branham v. Gardner*, 383 F. 2d 614 (6th Cir. 1967). G.S. 108-61 provides in pertinent part that "all of the provisions of the federal Social Security Act providing grants to the State for medical assistance are accepted and adopted, and the provisions of this Part shall be liberally construed in relation to such Act so that the intent to comply with it shall be made effectual." 10 North Carolina Administrative Code 32C.0203 provides, in pertinent part, that in order for an applicant to receive medical assistance, he must be found to be disabled "under Social Security standards". Thus, we find that it is clear that the federal act is controlling on this question; the decisions of the federal courts are binding on this question; and there is no basis whatsoever in the Act, or in federal court decisions interpreting the Act, to lend support to respondent's argument that a more difficult standard of proof should apply in this case.

Petitioner, through his medical evidence, established *prima facie* his disability to engage in any gainful employment. Apparently, both the hearing examiner and Judge Farmer concluded that in addition to medical evidence, petitioner had to meet an earnings test: i.e., that petitioner had to show that his condition prevented him from engaging in gainful activity which would provide earnings of either $230 or $260 per month. Such a conclusion has no basis in law. Under applicable federal regulations, § 20 C.F.R. 416.934, respondent Department could have attempted to

show petitioner's ability to engage in gainful activity, thereby rebutting his evidence of disability, by showing that petitioner did in fact have earnings from such activity averaging more than $260 per month in calendar year 1978 or more than $280 in calendar year 1979.[2] While the same regulations allow a claimant to show no gainful activity by showing earnings from such activity averaging less than $170 per month in 1978 or $180 per month in 1979, this is only one evidentiary approach allowed under the law. Such evidence is pertinent only where it can be shown that petitioner has in fact engaged in such gainful activity. This burden fell on respondent, not petitioner.

Judge Farmer's judgment also included another error of law. His conclusion of law numbered 2. reads as follows:

> 2. Under applicable law and regulations, the Petitioner was required to establish his disability through clinical findings and other objective, probative evidence; and opinions of physicians concerning disability may be considered only to the extent that they are supported by specific and complete clinical findings.

Such a position finds no support in pertinent decisions of the federal courts. *Rossi v. Califano,* supra, is typical of the federal circuit court decisions on this issue. There, the 3rd Circuit Court of Appeals held that the claimant met his initial burden and disability could be "medically determined" for purposes of the Act even though the opinion of claimant's doctor was not supported by objective clinical findings. Also, the trial court's conclusion is in clear conflict with the language of the Act. The Act (quoted supra) defines a physical impairment as one resulting from "physiological abnormalities which are *demonstrable* by medically acceptable clinical and laboratory diagnostic techniques". Petitioner's medical evidence that his disability arose from failure of healing following numerous surgical operations more than meets this test. Dr. Meredith's opinion evidence was more than adequately supported by petitioner's medical history for the period in question.

---

2. The $230 per month amount referred to by the hearing examiner is the presumptive amount for the calendar year 1976, a period of time not even remotely at issue under the facts of this case.

We hold that all of the evidence before the Department showed petitioner to have been totally disabled for twelve consecutive months beginning 6 May 1978, that there was no evidence to the contrary, that the order of the Department and the judgment of the trial court were entered under misapprehensions of applicable law, and that the judgment of the trial court must be reversed. This matter is remanded to the Superior Court of Wake County for an appropriate judgment reversing the order of the Department and ordering the Department to approve and allow petitioner's claim.

Reversed and remanded.

Chief Judge MORRIS and Judge CLARK concur.