MARIA D. MEZA, Petitioner v. DIVISION OF SOCIAL SERVICES and DIVISION OF MEDICAL ASSISTANCE OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondents

No. 518A08

(Filed 15 April 2010)

**1. Administrative Law; Public Assistance— judicial review of agency decision—N.C.G.S. § 108A-79(k)—standard of review**

The standard of review of an agency decision under N.C.G.S. § 108A-79(k) is *de novo* when the superior court exercises its statutory authority to take testimony and examine the facts of the case to determine whether the final decision is in error under

federal and State law. If, however, the superior court proceeds solely upon the administrative record, the hearing is governed by the provisions of the Administrative Procedure Act, in which questions of fact are reviewed under the whole record test and questions of law are reviewed *de novo*.

## 2. Administrative Law— judicial review of agency decision— emergency medical condition—findings of fact—whole record test

The Court of Appeals erred in affirming the superior court's judgment and order finding that petitioner non-qualified alien was suffering from an "emergency medical condition" as defined in 42 U.S.C. § 1396b(v)(3) for the duration of both of her stays at CMC-Randolph Behavioral Health Center and was thus entitled to Medicaid benefits for the entire length of her stays because: (1) the superior court erred in reviewing DHHS's factual findings *de novo*, as it proceeded solely based upon the administrative record; (2) the medical experts had conflicting opinions whether petitioner was suffering from an "emergency medical condition" under 42 U:S.C. § 1396b(v)(3), the record contains substantial competent evidence to support either the position of the hearing officer or that of the superior court, and thus the Court of Appeals erred in holding that the superior court properly considered the same evidence and concluded that the hearing officer's findings were not factually and legally justified; and (3) the whole record test does not allow the reviewing court to replace the factfinder's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.

Justice TIMMONS-GOODSON concurring in the result only.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 193 N.C. App. 350, 668 S.E.2d 571 (2008), affirming a judgment and order entered on 26 January 2007 by Judge Yvonne Mims Evans in Superior Court, Mecklenburg County. Heard in the Supreme Court 1 April 2009.

*Ott Cone & Redpath, P.A., by Thomas E. Cone, for petitioner-appellee.*

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General, and Brenda Eaddy, Assistant Attorney General, for respondent-appellants.*

PARKER, Chief Justice.

In this case we determine the appropriate standard of review to be applied by the superior court in an action commenced under N.C.G.S. § 108A-79(k), reviewing decisions by the North Carolina Department of Health and Human Services' Division of Social Services (DHHS) and Division of Medical Assistance (DMA) regarding claims for Medicaid benefits. For the reasons stated herein, we hold that when the superior court conducts a hearing based upon the administrative record, it must review questions of fact under the whole record test and questions of law de novo. In this case, the superior court having conducted a de novo review as to factual issues based solely on the administrative record, we reverse.

Petitioner Maria D. Meza was admitted to the CMC-Randolph Behavioral Health Center for psychiatric treatment on 15 October 2004 and was released on 29 October 2004. Petitioner applied for Medicaid benefits through the Mecklenburg County Department of Social Services (DSS) on 5 January 2005. On 26 January 2005, Mecklenburg County DSS issued a notice of benefits awarding Medicaid coverage for the date of admission (15 October 2004), but denying coverage for the remainder of the hospitalization. Petitioner was admitted to the same facility a second time, from 17 January 2005 through 11 February 2005, for inpatient mental health care. On 19 April 2005, petitioner again applied for Medicaid benefits through Mecklenburg County DSS. On 13 May 2005, Mecklenburg County DSS issued a notice of benefits for this hospitalization, again awarding Medicaid coverage only for the date of admission (17 January 2005).

Petitioner is a resident of Mecklenburg County, but is not a United States citizen. The parties do not dispute that for purposes of Medicaid coverage, petitioner is a "non-qualified alien." *See* 42 U.S.C. § 1396b(v)(1) (2000). As such, petitioner could not receive Medicaid coverage for her inpatient treatment unless her medical condition met the definition of an "emergency medical condition" under federal law. *Id.* § 1396b(v)(2)(A). Federal law defines the term "emergency medical condition" as:

a medical condition . . . manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(A) placing the patient's health in serious jeopardy,

(B) serious impairment to bodily functions, or

(C) serious dysfunction of any bodily organ or part.

*Id.* § 1396b(v)(3).

Petitioner appealed the decisions denying her claims for Medicaid coverage, and on 14 July 2005, a DHHS hearing officer conducted a hearing on both determinations. On 26 August 2005, the hearing officer issued a separate decision as to each period of hospitalization.

With respect to the first hospitalization, the hearing officer found that upon admission, petitioner was described as " 'acutely psychotic,' " with her husband reporting that she often wandered out of the house, forgot to change her clothes for several weeks at a time, threw food and clothing, and neglected her personal hygiene. The hearing officer further found that on 17 October 2004, petitioner's condition worsened to the extent that she was considered a danger to herself and forced medication was deemed necessary. According to the hearing officer, beginning on 22 October 2004 through discharge, petitioner was no longer considered to be a danger to herself.

Based on these findings, the hearing officer concluded that from 15 October 2004 through 21 October 2004, petitioner's condition required emergency medical services, and thus, she was entitled to Medicaid coverage for that period. With respect to the period from 22 October 2004 through 29 October 2004, the hearing officer concluded that petitioner's condition had stabilized to the extent that she was no longer a danger to herself, and therefore, "the remaining treatment was to cure the underlying illness." As a result, the hearing officer reversed the decision in part and awarded petitioner Medicaid coverage for her treatment from 15 October 2004 through 21 October 2004, but not from 22 October 2004 through 29 October 2004.

With respect to petitioner's second hospitalization, the hearing officer found that she had been previously diagnosed with schizophrenia and that she was withdrawn, isolated, and suspicious and had feelings of persecution. The hearing officer concluded that petitioner's condition did not qualify as "emergent" under the federal definition because her condition had stabilized following the initial day of admission. Based on this determination, the hearing officer affirmed the decision awarding Medicaid coverage only for the date of admission, 17 January 2005.

The hearing officer's decisions became DHHS's final decisions inasmuch as petitioner did not seek further review by the chief hearing officer. On 5 October 2005, petitioner filed a petition for judicial review pursuant to N.C.G.S. § 108A-79(k) in Superior Court, Mecklenburg County. The superior court heard the matter based on the administrative record developed before DHHS. Concluding that the case involved statutory interpretation and application of law to facts, the superior court reviewed the final agency decision de novo and made findings of fact.

The superior court found as fact that at the time of each hospital admission:

> Ms. Meza was in a severe psychotic state of sudden onset resulting from decompensation of her long-standing underlying illness. Throughout each [of her admissions], she demonstrated severe symptoms of psychosis, loss of touch with reality, paranoia and suspiciousness, internal distractions including delusions and hallucinations, gross disorganization, and inability to attend to basic needs such as eating, bathing, and grooming. Throughout most of both admissions, she was unable to talk or communicate in any meaningful manner with staff or her peers, and her judgment and insight were very limited. She refused medication during both admissions, and forced medication orders were required during each.

The court determined that petitioner's condition "placed her health in serious jeopardy and could reasonably have been expected to result in either placing [her] health in serious jeopardy or serious impairment to bodily functions or serious dysfunction of a bodily organ or part." The court further found that the treatment at issue was "required and given to stabilize her condition" and that "her condition was not stabilized until her discharge."

Based on its findings, the superior court concluded that (1) "[p]etitioner's medical condition at each admission was an emergency medical condition as defined in 42 U.S.C. § 1396b(v)(3)," and (2) "treatment throughout each admission constituted immediate, medically necessary, and appropriate treatment for [her] emergency medical condition." The superior court reversed DHHS's decisions and ordered DHHS to provide petitioner with Medicaid coverage for the entirety of both hospitalizations.

DHHS and DMA appealed to the Court of Appeals, which in a divided opinion affirmed the trial court's judgment and order. The

Court of Appeals' majority held that the superior court appropriately conducted a de novo review to determine whether DHHS's decisions were factually and legally correct. *Meza v. Div. of Soc. Servs.*, 193 N.C. App. 350, 355-56, 668 S.E.2d 571, 574-75 (2008). The dissenting judge would have reversed the trial court for failing to review DHHS's factual determinations under the whole record test and the conclusions of law de novo, as the trial court proceeded on the administrative record. *Id.* at 361-62, 668 S.E.2d at 578-79 (Steelman, J., dissenting). DHHS and DMA timely appealed to this Court based on the dissenting opinion.

DHHS and DMA contend that the trial court and the Court of Appeals did not apply the correct standards of review. We agree. Petitioner filed her appeal pursuant to N.C.G.S. § 108A-79(k), which both creates the right of action and defines the parameters within which the reviewing court must proceed.

As with the analysis of any statute, we look first to certain cardinal principles of statutory interpretation. "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). Moreover, where more than one statute is implicated, the Court must construe the statutes *in pari materia* and give effect, if possible, to all applicable provisions. *Bd. of Adjust. v. Town of Swansboro*, 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993) (citing *Jackson v. Guilford Cty. Bd. of Adjust.*, 275 N.C. 155, 167, 166 S.E.2d 78, 86 (1969)). With these principles in mind, we examine the proceeding contemplated under N.C.G.S. § 108A-79(k) to determine the appropriate standard of review.

[1] North Carolina General Statute section 108A-79(k) provides as follows:

> (k) Any applicant or recipient who is dissatisfied with the final decision of the Department may file . . . a petition for judicial review in superior court of the county from which the case arose. . . . The hearing shall be conducted according to the provisions of Article 4, Chapter 150B, of the North Carolina General Statutes. The court shall, on request, examine the evidence excluded at the hearing under G.S. 108A-79(e)(4) or G.S. 108A-79(i)(1) and if the evidence was improperly excluded, the

court shall consider it. Notwithstanding the foregoing provisions, the court may take testimony and examine into the facts of the case, including excluded evidence, to determine whether the final decision is in error under federal and State law, and under the rules and regulations of the Social Services Commission or the Department of Health and Human Services. . . . Nothing in this subsection shall be construed to abrogate any rights that the county may have under Article 4 of Chapter 150B.

N.C.G.S. § 108A-79(k) (2005).

After stating the time and place for filing the petition, the first mandate of the statute is that the hearing before the superior court be conducted in accordance with Article 4, the judicial review section of Chapter 150B of the General Statutes, the Administrative Procedure Act (APA). A comparison of the provisions in N.C.G.S. § 108A-79(k) and those in Article 4 of the APA discloses that N.C.G.S. § 108A-79(k) is something of a hybrid and that the language in N.C.G.S. § 108A-79(k) is not consistent with provisions of Article 4 of the APA. However, an analysis of these differences does help to inform our decision as to the proper standard of review under N.C.G.S. § 108A-79. For example, N.C.G.S. § 150B-49 deals with new evidence before the superior court and specifically directs that if new evidence is to be taken, the superior court judge shall remand the case either to the administrative law judge or to the agency that conducted the hearing, whichever is applicable. *Id.* § 150B-49 (2005). Similarly, subsections (a) and (a1) of N.C.G.S. § 150B-51 track this same concept by requiring the superior court judge, in reviewing a State Personnel Commission or other agency decision, to determine first whether the Commission or the agency heard new evidence not considered by the administrative law judge and if so, to remand to the Commission or the agency for entry of a decision in accordance with the official record. *Id.* § 150B-51(a), (a1) (2005). Finally, in N.C.G.S. § 150B-51(c) the General Assembly provided that if the agency rejects the administrative law judge's recommendation, the superior court "shall review the official record, de novo, and shall," based on the official record, "make findings of fact and conclusions of law." *Id.* § 150B-51(c) (2005).

Under N.C.G.S. § 150B-51(b), the General Assembly provided the scope and standard of review in all agency decisions except those covered by N.C.G.S. § 150B-51(c). The APA gives a court reviewing the decision of an administrative agency a panoply of remedies, including authority to affirm or to remand the case to the agency

for further proceedings or to reverse or modify the agency's decision when a petitioner's "substantial rights" may have been violated because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible . . . in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

*Id.* § 150B-51(b) (2005).

Unlike the above provisions of the APA, N.C.G.S. § 108A-79(k) authorizes the superior court when reviewing a DHHS decision to do two things. First, "[t]he court shall, on request, examine the evidence excluded at the hearing . . . and if the evidence was improperly excluded, the court shall consider it." *Id.* § 108A-79(k). Second, "[n]otwithstanding the foregoing provisions, the court may take testimony and examine into the facts of the case, including excluded evidence, to determine whether the final decision is in error under federal and State law." *Id.* This provision in the appeal from a DHHS agency decision, in which no administrative law judge determination is involved is akin to the provision of N.C.G.S. § 150B-51(c) in which the agency rejects the administrative law judge's recommendation, and the superior court is mandated to make findings of fact de novo, albeit on the official administrative record as opposed to taking new testimony.

Reading the language of N.C.G.S. § 108A-79(k) in conjunction with Article 4 of the APA, we conclude that under N.C.G.S. § 108A-79(k) two types of proceedings are authorized: one in which the superior court proceeds on the administrative record and the other in which the superior court hears testimony and develops its own factual record. This interpretation is consistent with this Court's decision in *Lackey v. North Carolina Department of Human Resources,* wherein this Court agreed with the Court of Appeals that the appropriate standard of review is provided by the review

provisions of the APA, which at that time were codified in N.C.G.S. § 150A-51. 306 N.C. 231, 234, 293 S.E.2d 171, 174 (1982). In *Lackey* the Court of Appeals reviewed the background of N.C.G.S. § 108-44, the precursor to N.C.G.S. § 108A-79, which, like the present statute, permitted the superior court to take testimony and examine into the facts. *Lackey v. N.C. Dep't of Human Res.*, 54 N.C. App. 57, 59-60, 283 S.E.2d 377, 378-79 (1981), *modified and aff'd*, 306 N.C. 231, 293 S.E.2d 171 (1982). The Court of Appeals stated:

> It is clear that the review provisions of Chapter 108, both the present and the former versions, give the Superior Court judge the option of proceeding on the record developed at the agency hearing or developing his own factual record. Judge Farmer chose to proceed on the agency record. Under such circumstances, and considering the similar thrust of the two statutes, we hold the review standards of the Administrative Procedures Act, G.S. 150A-51, should be applied in this case. Such a position is consistent with the present provisions of G.S. 108-44(j). [N.C.G.S. § 108-44(j) (1979) provided that hearings before the superior court should be conducted in accordance with the Administrative Procedure Act.]

*Id.* at 60, 283 S.E.2d at 379 (citation omitted); *see also, Diaz*, 360 N.C. at 386, 628 S.E.2d at 2-3; *Henderson v. N.C. Dep't of Human Res.*, 91 N.C. App. 527, 530-31, 372 S.E.2d 887, 889-90 (1988).

When the superior court proceeds on the administrative record, the review by that court "shall be conducted according to the provisions" of the APA. N.C.G.S. §§ 108A-79(k), 150B-51(b). The applicable standards of review under the APA are that " '[q]uestions of law receive *de novo* review,' whereas fact-intensive issues 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.' " *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (alterations in original)).

When conducting de novo review, the reviewing court " ' "consider[s] the matter anew[] and freely substitutes its own judgment for the agency's." ' " *Id.* at 660, 599 S.E.2d at 895 (quoting *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13-14, 565 S.E.2d 9, 17 (2002) (alterations in original) (citation omitted)). However, when applying the whole record test, the reviewing court "may not substitute its judgment for the agency's as between two conflicting views,

**MEZA v. DIVISION OF SOC. SERVS.**

[364 N.C. 61 (2010)]

even though it could reasonably have reached a different result had it reviewed the matter *de novo.*" *Watkins v. N.C. State Bd. of Dental Exam'rs,* 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004) (citing, *inter alia, Elliott v. N.C. Psychology Bd.,* 348 N.C. 230, 237, 498 S.E.2d 616, 620 (1998)). "Rather, a court must examine all the record evidence— that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Id.* (citing *Elliott,* 348 N.C. at 237, 498 S.E.2d at 620). "Substantial evidence" is defined as "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C.G.S. § 150B-2(8b) (2005).

In light of the foregoing, once the superior court determines, based on the whole record test, that the findings of fact are not supported by substantial evidence in the record and, therefore, cannot support the hearing officer's conclusions of law, the court can follow one of two procedures. The court can remand the case to the agency for further proceedings, or the court can take evidence, make findings of fact, and draw its own conclusions of law from the findings thus made. What the superior court is not permitted to do, however, is to make findings of fact de novo without taking testimony. Had the legislature intended that the superior court in reviewing a DHHS decision be able to make findings of fact without taking testimony, the legislature could have provided, as it did in N.C.G.S. § 150B-51(c), that the findings of fact be based on the official record.

Petitioner and the majority in the Court of Appeals rely upon *Chatmon v. North Carolina Department of Health & Human Services,* 175 N.C. App. 85, 622 S.E.2d 684 (2005), *disc. rev. denied,* 360 N.C. 479, 688 S.E.2d 689 (2006), for the proposition that even when, as in this case, the superior court does not hear testimony, that court is nevertheless permitted to conduct a de novo review as to factual issues to determine whether DHHS's decision is "factually and legally correct." *Id.* at 90, 622 S.E.2d at 688. This reliance on *Chatmon* is misplaced. The court in *Chatmon* did not reference this Court's decision in *Lackey* and proceeded as if in uncharted waters. The superior court in *Chatmon,* unlike the superior court in the present case, did not engage in de novo review, but based its decision on the administrative record and applied the whole record test. Moreover, the opinion in *Chatmon* did not articulate the standard of review the superior court is to apply in reviewing an agency decision pursuant to N.C.G.S. § 108A-79(k). As the dissenting opinion in the court below appropriately noted, "[n]either *Chatmon* nor N.C. Gen.

Stat. § 108A-79(k) explicitly grants the superior court the authority to engage in *de novo* review of the administrative agency's findings." *Meza*, 193 N.C. App. at 363, 668 S.E.2d at 579 (Steelman, J., dissenting). Moreover, *Chatmon* states that "section 108A-79(k) requires the trial court to sit as both a trial and appellate court" but that "the trial court should be limited to determining whether the reason offered for [the agency's] decision . . . was factually and legally correct." 175 N.C. App. at 90, 622 S.E.2d at 688. Section 108A-79(k) does not require the superior court as the reviewing court to sit as a trial court. Rather, the statute states that the superior court "may take testimony and examine into the facts of the case." N.C.G.S. § 108A-79(k). Under N.C.G.S. § 108A-79(k) the stated purpose for which the superior court may take evidence and examine into the facts, namely, to determine whether the agency's decision "is in error under federal and State law," is an iteration of the scope of review, not a statement of the appropriate standard of review.[1] For these reasons, in the present case the Court of Appeals erred in relying on *Chatmon* as controlling on the standard of review to be applied by the superior court. Thus, we specifically disavow the language in the decision below suggesting that *Chatmon* and N.C.G.S. § 108A-79(k), not the APA, are controlling. *Meza*, 193 N.C. App. at 354-57, 668 S.E.2d at 573-75.

We now turn to proceedings in which the superior court exercises its statutory authority to develop its own factual record. While the superior court's ultimate authority is to determine whether the agency's decision is in error under the applicable law, the statute contemplates a de novo review as to factual and legal issues. Only in conducting a full de novo review in which the superior court makes new findings of fact and conclusions of law could the superior court properly "examine into the facts of the case . . . to determine whether the final decision is in error under federal and State law." N.C.G.S. § 108A-79(k). We note that *Chatmon* states that N.C.G.S. § 108A-79(k) "should not be read to authorize the trial court to rehear the case,

---

1. The scope of judicial or appellate review covers whether the findings of fact are supported by the evidence, whether the findings support the conclusions of law, and whether the conclusions of law are a proper statement and application of the law. The standards of review are the tests by which these determinations are made, namely, the "any competent evidence" test, the "substantial evidence based on the whole record" test, and the "clear, cogent and convincing evidence" test with respect to findings of fact and the de novo standard of review with respect to questions or issues of law. *See generally Brooks v. McWhirter Grading Co.*, 303 N.C. 573, 578-80, 281 S.E.2d 24, 27-29 (1981); *In re McCrary*, 112 N.C. App. 161, 164-66, 435 S.E.2d 359, 362-63 (1993).

make wholly new factual findings, and determine that alternative grounds not relied upon by [DHHS] would also justify the sanction." 175 N.C. App. at 90-91, 622 S.E.2d at 688. We do not read N.C.G.S. § 108A-79(k) to limit the superior court in this fashion. This portion of the holding in *Chatmon* does not find support in the language of the statute, and to the extent it is inconsistent with this opinion, it is overruled.

At this point we should note that our holding today that the superior court sitting as a reviewing court can engage in de novo fact finding is specifically limited to review pursuant to N.C.G.S. § 108A-79(k) and is in no way intended to implicate review of other administrative proceedings. *See Carroll*, 358 N.C. at 661-64, 599 S.E.2d at 895-97.

In the case at bar, the superior court heard the matter "based upon the administrative record." Accordingly, the superior court was bound by the standards of review articulated in the APA. N.C.G.S. § 108A-79(k). The superior court should have applied the whole record test to determine whether substantial evidence existed in the record to justify DHHS's decision. The superior court, however, erroneously conducted a de novo review as to factual issues and made new findings of fact without taking testimony.

Upon conducting its de novo factual review, the superior court found as fact that petitioner's "condition during each admission was an acute one . . . which placed her health in serious jeopardy and could reasonably have been expected to result in either placing the patient's health in serious jeopardy or serious impairment to bodily functions or serious dysfunction of a bodily organ or part." On the basis of these new findings, the superior court concluded that petitioner's condition "required immediate treatment to stabilize" her symptoms and that the absence of this treatment "would reasonably have been expected to result in either placing the patient's health in serious jeopardy or serious impairment to bodily functions or serious dysfunction of a bodily organ or part as described in 42 U.S.C. § 1396b(v)(3)." The Court of Appeals affirmed, holding that the superior court "properly conducted a de novo review to the extent it was functioning as an appellate court." *Meza*, 193 N.C. App. at 359, 668 S.E.2d at 577.

Having determined that the superior court's order was " 'entered under a misapprehension of the applicable law,' [this Court] may remand for application of the correct legal standards." *Carroll*, 358 N.C. at 664, 599 S.E.2d at 897 (internal quotation marks omitted)

(quoting *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 469, 597 S.E.2d 674, 693 (2004)). In *Carroll*, this Court recognized "that in cases appealed from administrative tribunals, the trial court's erroneous application of the appropriate standard of review does not automatically necessitate remand." *Id.* (citing, *inter alia*, *Mann Media*, 356 N.C. at 15-16, 565 S.E.2d at 18-19). The Court in *Carroll* further recognized that remand is not required when "the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)." 358 N.C. at 665, 599 S.E.2d at 898 (citing *Shackleford-Moten v. Lenoir Cty. Dep't of Soc. Servs.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002), *disc. rev. denied*, 357 N.C. 252, 582 S.E.2d 609 (2003)).

The superior court's misapplication of the de novo standard of review to the factual issues in the administrative record does not interfere with this Court's ability to "assess how that standard *should have been applied* to the particular facts of this case." *Id.* We now proceed to the substantive issues in the interests of judicial economy and fairness to the parties.

[2] This Court must now determine whether the Court of Appeals erred in affirming the superior court's judgment and order finding that petitioner was suffering from an "emergency medical condition" as defined in 42 U.S.C. § 1396b(v)(3) for the duration of both of her stays at CMC-Randolph Behavioral Health Center.

The evidence in the record reveals that petitioner's condition was a recurring one, as she had been admitted to CMC-Randolph for approximately ten days in 2002 and she had also been hospitalized in 1999 or 2000. Upon her admission to CMC-Randolph on 15 October 2004, petitioner had not taken her medications for approximately one year.

The physicians reviewing petitioner's medical records reached differing conclusions as to her condition and whether she was suffering from an emergency medical condition. Mignon Benjamin, M.D., who examined petitioner's records for Medical Review of North Carolina, opined that petitioner was suffering from a chronic illness, not a sudden onset issue. Dr. Benjamin was also of the opinion that petitioner could have avoided her hospitalizations by remaining on her outpatient medications. Dr. Benjamin testified that on 15 October 2004, petitioner was admitted to get "psych medicine" and that upon

receiving the medicines, her condition began to slowly improve. Dr. Benjamin noted that the records of petitioner's October stay indicated no suicidal or homicidal ideation and that her violence checklist showed no aggression. As to the 17 January 2005 admission, Dr. Benjamin testified that petitioner again had no auditory hallucinations or suicidal or homicidal ideations, showed no aggression, and was not a danger to herself or others. As to both hospitalizations, Dr. Benjamin concluded that petitioner was not suffering from an emergency medical condition and that "perhaps we were mistaken to even give [coverage for] the first dates [of admission]."

Praful Mehta, M.D., petitioner's treating physician from 19 October through 29 October 2004, reviewed the records for petitioner's 15 October through 29 October 2004 hospitalization. Dr. Mehta noted that petitioner did not experience significant improvement in her mental status until 25 October 2004, ten days after admission. Dr. Mehta opined that due to the severity of petitioner's symptoms and her resistance to medication, "the absence of this acute level of medical attention would clearly have resulted in a very fast decompensation in her condition and would have placed her health in serious jeopardy." Dr. Mehta was of the opinion that the care petitioner received from 15 October through 29 October 2004 "all constituted a single course of treatment which was necessary for the treatment of an emergency medical condition."

Anthony J. DiNome, M.D., reviewed petitioner's records from her 17 January through 11 February 2005 hospitalization, when he was her treating physician. Dr. DiNome reported that petitioner showed no significant improvement in her mental status until 8 February 2005, after which she was transitioned to a lower level of care. Dr. DiNome was also of the opinion that petitioner's condition was such that "the absence of this acute level of medical attention would clearly have resulted in a very fast decompensation in her condition and would have placed her health in serious jeopardy." In Dr. DiNome's opinion, the care and services received by petitioner from 17 January through 11 February 2005 "all constituted a single course of treatment which was necessary for the treatment of an emergency medical condition."

The medical experts clearly had conflicting opinions whether petitioner was suffering from an "emergency medical condition" under 42 U.S.C. § 1396b(v)(3). As noted by the dissenting opinion in the Court of Appeals, the record, therefore, contains substantial competent evidence "to support either the position of the hearing officer

**MEZA v. DIVISION OF SOC. SERVS.**

[364 N.C. 61 (2010)]

or that of [the superior court]." *Meza*, 193 N.C. App. at 361, 668 S.E.2d at 578 (Steelman, J., dissenting).

We reiterate that the whole record test "does not allow the reviewing court to replace the [fact finder's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citing *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 95 L. Ed. 456 (1951)). This principle applies to the superior court in this case, for when it "exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *Carroll*, 358 N.C. at 662, 599 S.E.2d at 896. This principle has been adhered to by this Court, for " 'there is but one fact-finding hearing of record when witness demeanor may be directly observed.' " *Id.* (quoting Julian Mann III, *Administrative Justice: No Longer Just a Recommendation*, 79 N.C. L. Rev. 1639, 1653 (2001)).

In this case the DHHS hearing officer weighed the conflicting evidence and reached a middle ground regarding petitioner's first hospitalization, choosing to award Medicaid benefits from 15 October through 21 October 2004. The DHHS hearing officer chose to adopt Dr. Benjamin's opinion regarding the second hospitalization, finding that petitioner suffered from an emergency medical condition only on the day of admission, and awarded Medicaid benefits only for the day of 17 January 2005. The DHHS hearing officer's findings of fact are supported by substantial competent evidence in the form of Dr. Benjamin's expert opinion. Under this Court's decision in *Diaz*, 360 N.C. at 390, 628 S.E.2d at 5, recognizing the "stabilization" interpretation of the provisions in 42 U.S.C. § 1396b(v)(3), these findings of fact in turn support the hearing officer's conclusions of law that the care and services petitioner received were necessary to treat an emergency medical condition under 42 U.S.C. § 1396b(v)(3) as to those specific dates only and that Medicaid coverage should be awarded accordingly. The Court of Appeals, therefore, erred in holding that the superior court properly "considered the same evidence and concluded that the hearing officer's findings were not factually and legally justified." *Meza*, 193 N.C. App. at 356, 668 S.E.2d at 575.

In conclusion, we hold that the standard of review of an agency decision under N.C.G.S. § 108A-79(k) is de novo when the superior court exercises its statutory authority to "take testimony and examine into the facts of the case . . . to determine whether the final deci-

sion is in error under federal and State law." If, however, the superior court proceeds solely upon the administrative record, the hearing is governed by the provisions of the Administrative Procedure Act, in which questions of fact are reviewed under the whole record test and questions of law are reviewed de novo.

The superior court here erred in reviewing DHHS's factual findings de novo, as it proceeded solely based upon the administrative record. The Court of Appeals erred in affirming the superior court's de novo review of the factual issues. Because DHHS's factual findings are supported by substantial competent evidence in the record, the decision of the Court of Appeals is reversed, and the case is remanded to the superior court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice TIMMONS-GOODSON concurring in the result only.

As the majority opinion observes, the superior court in this case conducted a *de novo* review of the administrative record and made its own factual findings without taking additional testimony. I agree with the majority that the superior court was not authorized to use this procedure and should have applied the whole record test. However, because I do not read section 108A-79(k) as expansively as the majority, I concur in the result only.