IN THE SUPREME COURT OF NORTH CAROLINA

No. 170A19

Filed 5 June 2020

STATE OF NORTH CAROLINA

v.

MELVIN LAMAR FIELDS


On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 827 S.E.2d 120 (N.C. Ct. App. 2019), affirming a judgment entered on 12 January 2018 by Judge Paul Ridgeway in Superior Court, Durham County. Heard in the Supreme Court on 9 March 2020.

*Joshua H. Stein, Attorney General, by Lisa Bradley, Special Deputy Attorney General, for the State-appellant.*

*Richard Croutharmel for defendant-appellee.*

DAVIS, Justice.

In this case, we address the interplay between the offenses of habitual misdemeanor assault, felony assault inflicting serious bodily injury, and misdemeanor assault inflicting serious injury. Based upon our application of principles of statutory construction, we agree with the Court of Appeals that defendant could not be separately convicted and punished for the offenses of both habitual misdemeanor assault and felony assault inflicting serious bodily injury

stemming from the same act. However, because defendant's conviction for habitual misdemeanor assault should have been arrested rather than vacated, we modify and affirm the decision of the Court of Appeals and remand for further proceedings.

**Factual and Procedural Background**

The assault in this case occurred around midnight on 2 November 2015, when defendant Melvin Lamar Fields assaulted A.R.,[1] a transgender woman. A.R., defendant, and a third person had met at defendant's home that evening to engage in a mutual sexual encounter. While the three were showering, defendant seized A.R. by the hair and used his other hand to roughly grab her genitals. A.R. attempted to push defendant away and told him to let her go, stating, "Stop, you're hurting me." Defendant refused to release her and continued to squeeze her genitals. Defendant then said, "Let you go huh?" and slammed her to the floor, resulting in A.R. hitting her head on the side of the bathtub. Defendant then jumped on top of her and put his hands around her neck while screaming at her.

A.R. noticed that blood was running down her leg and told defendant that she was hurt and needed to leave. At first, defendant tried to prevent her from leaving, but eventually she was able to get dressed and drive herself to the hospital. As a result of the incident, A.R. needed 15 stitches to repair the wound to her scrotum.

---

[1] We use the victim's initials in this opinion in order to protect her identity.

On the day after the incident, defendant contacted A.R. multiple times asking that she not tell the police what had happened. However, A.R. chose to file a police report, and defendant was subsequently indicted on 15 August 2016 by the Durham County grand jury for felony assault inflicting serious bodily injury (felony assault) and malicious maiming of a privy member. On 6 February 2017, the grand jury issued a superseding indictment charging defendant with attempted malicious castration or maiming of a privy member, felony assault, and habitual misdemeanor assault.

A trial was held in Superior Court, Durham County, beginning on 8 January 2018. The trial court instructed the jury on two felony offenses—felony assault and attempted castration or maiming. Prior to trial, defendant stipulated to two prior misdemeanor assault convictions within the past 15 years. Based on this stipulation, instead of also submitting the offense of habitual misdemeanor assault to the jury, the trial court submitted the predicate misdemeanor offense of assault inflicting serious injury (misdemeanor assault).

On 11 January 2018, the jury found defendant guilty of misdemeanor assault and felony assault. The jury found as an aggravating factor that defendant had taken advantage of a position of trust or confidence to commit the offense. The trial court proceeded to impose sentences upon defendant for the offenses of felony assault and habitual misdemeanor assault. Defendant was sentenced to a minimum of 19 months imprisonment and a maximum of 32 months for the felony assault offense and to a minimum of 9 months and a maximum of 20 months for the habitual misdemeanor

assault offense with the two sentences to run consecutively. Defendant appealed his convictions to the Court of Appeals.

Defendant raised two main arguments on appeal. First, he contended that there was insufficient evidence to submit the felony assault charge to the jury because A.R. did not suffer a serious bodily injury. Second, he argued that the trial court erred in entering judgment and sentencing him for the crime of habitual misdemeanor assault in light of his simultaneous conviction and sentencing for felony assault.

On the first issue, the Court of Appeals determined that sufficient evidence was introduced at trial to permit the jury to find that A.R. suffered a serious bodily injury.[2] *State v. Fields*, 827 S.E.2d 120, 122–23 (N.C. Ct. App. 2019). With regard to the second issue, the Court of Appeals held that the trial court had erred in entering judgment and sentencing defendant on both the felony assault and habitual misdemeanor assault convictions given that both offenses arose from the same act. *Id*. at 125. Based on this determination, the Court of Appeals vacated the trial court's judgment on the offense of habitual misdemeanor assault. *Id*.

In a separate opinion, Judge Berger concurred in part and dissented in part. *Id*. at 126 (Berger, J., dissenting). Judge Berger agreed with the Court of Appeals majority that there was sufficient evidence to submit the felony assault charge to the

---

[2] This aspect of the Court of Appeals' decision is not before us in this appeal.

jury but disagreed that the habitual misdemeanor assault conviction should have been vacated. *Id.* at 126–27 (Berger, J., dissenting).

On 21 May 2019, the State filed a notice of appeal based upon Judge Berger's dissent as well as a petition for discretionary review seeking review of additional issues. We allowed the State's petition for discretionary review on 14 August 2019.

## Analysis

The primary issue in this appeal is whether defendant could lawfully be convicted and sentenced for both habitual misdemeanor assault and felony assault where both offenses arose from the same assaultive act. In order to analyze this issue, it is necessary to review the three separate statutes implicated by his convictions.

The statute establishing the offense of habitual misdemeanor assault provides, in pertinent part, as follows:

> A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33 and causes physical injury . . . and has two or more prior convictions for either misdemeanor or felony assault, with the earlier of the two prior convictions occurring no more than 15 years prior to the date of the current violation. . . . A person convicted of violating this section is guilty of a Class H felony.

N.C.G.S. § 14-33.2 (2019).

Subsection 14-33, which is the statute governing the crime of misdemeanor assault, states, in relevant part, as follows:

> (c) *Unless the conduct is covered under some other provision of law providing greater punishment*, any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she:

> (1) Inflicts serious injury upon another person . . .

N.C.G.S. § 14-33(c)(1) (2019) (emphasis added). Finally, the statute addressing felony assault provides that "any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony." N.C.G.S. § 14-32.4(a) (2019).[3]

The Court of Appeals' decision was based largely on the proposition that defendant could not be separately convicted and punished for both misdemeanor assault and felony assault based on the same conduct due to the above-quoted prefatory language contained in the misdemeanor assault statute. In applying the prefatory language, the Court of Appeals reasoned that defendant's conduct *was*, in fact, "covered under some other provision of law providing greater punishment"— namely, the felony assault statute—given that a violation of the misdemeanor assault statute is only a misdemeanor while a violation of the felony assault statute is a felony. *Fields*, 827 S.E.2d at 124–25. The Court of Appeals concluded that this same rationale precluded defendant from being punished for habitual misdemeanor assault given that the habitual misdemeanor assault conviction was "expressly predicated" on the underlying offense of misdemeanor assault. *Id*. at 124.

In its appeal, the State asks us to reject the Court of Appeals' analysis, arguing that the trial court did not err by entering judgment on defendant's convictions and

---

[3] For purposes of clarity and ease of reading, we refer to these three statutes for the remainder of this opinion as the habitual misdemeanor assault statute, the misdemeanor assault statute, and the felony assault statute, respectively.

sentencing him for both felony assault and habitual misdemeanor assault. Although the State does not dispute the fact that both convictions were based on the same assaultive act, the State asserts that the above-quoted prefatory language in the misdemeanor assault statute is inapplicable here given the fact that misdemeanor assault was merely used as an element of habitual misdemeanor assault. The State contends that because judgment was not actually entered on the misdemeanor assault offense and defendant was not sentenced based on his conviction for that offense, the prefatory language in the misdemeanor assault statute has no relevance here. The State further points to the fact that no analogous prefatory language is contained in the habitual misdemeanor assault statute.

The parties' arguments raise issues of statutory construction. It is well-established that "[t]he intent of the Legislature controls the interpretation of a statute." *State v. Joyner*, 329 N.C. 211, 217, 494 S.E.2d 653, 657 (1991) (citation omitted). If the language of a statute is unambiguous, this Court "will give effect to the plain meaning of the words without resorting to judicial construction." *State v. Byrd*, 363 N.C. 214, 219, 675 S.E.2d 323, 325 (2009) (citation omitted). "Moreover, where more than one statute is implicated, the Court must construe the statutes *in pari materia* and give effect, if possible, to all applicable provisions." *Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 66, 692 S.E.2d 96, 100 (2010) (citation omitted).

Although this Court has not previously had occasion to address the specific issue raised in this case, we interpreted identical prefatory language contained in a

different criminal statute in *State v. Davis*, 364 N.C. 297, 698 S.E.2d 65 (2010). At issue in *Davis* was whether the trial court could lawfully sentence the defendant for the offenses of both felony serious injury by vehicle and assault with a deadly weapon inflicting serious injury arising from the same conduct. *Id.* at 298, 698 S.E.2d at 66. We noted that the statute governing the crime of felony serious injury by vehicle provided that *"unless the conduct is covered under some other provision of law providing greater punishment . . .* felony serious injury by vehicle is a Class F felony." *Id.* at 302, 698 S.E.2d at 68 (quoting N.C.G.S. § 20-141.4(b) (2009)). We stated that this prefatory language "limits a trial court's authority to impose punishment for the enumerated offenses when punishment is imposed for higher class offenses that apply to the same conduct." *Id.* We explained that:

> This [prefatory] language indicates the General Assembly was aware when it enacted the current version of [the vehicular injury statute] that other, higher class offenses might apply to the same conduct. In such situations, as in this case, the General Assembly intended an alternative: that punishment is *either* imposed for the more heavily punishable offense *or* for the [vehicular injury] offense, but not both.

*Id.* at 304, 698 S.E.2d at 69.

We noted that assault with a deadly weapon inflicting serious injury, a Class E felony, provided "greater punishment" than felony serious injury by vehicle—a Class F felony. *Id.* at 305, 698 S.E.2d at 70. Thus, we concluded that the trial court lacked the authority to impose punishment for felony serious injury by vehicle because assault with a deadly weapon inflicting serious injury was the offense

"providing greater punishment" under the plain language of the statute. *See id.* at 305–06, 698 S.E.2d at 70. Accordingly, we held that the conviction for felony serious injury by vehicle could not stand. *Id.*

In the present case, this same prefatory language would serve to prevent defendant from being separately punished for both misdemeanor assault and felony assault. As noted above, felony assault is a Class F felony, thereby providing greater punishment than misdemeanor assault—a Class A1 misdemeanor. Consequently, defendant's conduct "is covered under some other provision of law providing greater punishment[.]" N.C.G.S. § 14-33(c).

The State concedes that the prefatory language in the misdemeanor assault statute would have the effect of precluding defendant from being separately punished for both misdemeanor assault and felony assault if these were actually the offenses for which defendant was sentenced. However, because (1) defendant was actually sentenced for the crime of *habitual misdemeanor assault* rather than for misdemeanor assault; and (2) no similar prefatory language exists in the habitual misdemeanor assault statute, the State argues that the General Assembly did not intend for the prefatory language in the misdemeanor assault statute to apply on these facts.

We disagree. The fatal flaw in the State's argument is that in order for defendant to be guilty of habitual misdemeanor assault, his conduct had to have first violated the misdemeanor assault statute. As noted above, the habitual misdemeanor

assault statute provides that "[a] person commits the offense of habitual misdemeanor assault if that person" (1) "*violates any of the provisions of [the misdemeanor assault statute]* and causes physical injury;" and (2) "has two or more prior convictions for either misdemeanor or felony assault" within the past 15 years. N.C.G.S. § 14-33.2 (2019) (emphasis added).

Based on the prefatory language contained in the misdemeanor assault statute, defendant's conduct would constitute a violation of that statute—a necessary prerequisite for defendant's guilt of habitual misdemeanor assault—*only if* his conduct was not covered under a separate provision of law providing greater punishment. Because the felony assault statute *did* provide greater punishment for the act committed by defendant upon A.R., that act did not constitute a violation of the misdemeanor assault statute and, accordingly, defendant could not be convicted of habitual misdemeanor assault.

In other words, defendant's guilt of habitual misdemeanor assault required that he first have violated the misdemeanor assault statute. But because the prefatory language of the misdemeanor assault statute was triggered, his conduct was not deemed to constitute a violation of that statute. Thus, absent a violation of the misdemeanor assault statute, he could not be guilty of habitual misdemeanor assault, and as a result, the trial court erred in sentencing him for that offense.

In short, the State's argument fails to account for the fact that defendant's habitual misdemeanor assault conviction was inextricably linked to his having

violated the misdemeanor assault statute. The effect of the prefatory language in that statute did not simply disappear upon the misdemeanor assault conviction being upgraded to a conviction for habitual misdemeanor assault. Accordingly, the fact that the General Assembly did not repeat the prefatory language in the habitual misdemeanor assault statute is of no consequence. Once defendant was found guilty of both misdemeanor assault and felony assault, this invoked the prefatory language of the misdemeanor assault statute, which served to invalidate the misdemeanor assault conviction. This, in turn, meant that defendant could not be punished for habitual misdemeanor assault. As a result, we are compelled to affirm the result reached by the Court of Appeals on this issue.

* * *

Finally, the State argues in the alternative that even assuming the habitual misdemeanor assault conviction cannot stand, that conviction was improperly *vacated* by the Court of Appeals and should instead have been *arrested*. In his appellate brief, defendant does not disagree with the State's contention on this issue.

This Court has previously explained the distinction between vacating and arresting a judgment as follows:

> Defendants argue that the effect of arresting judgment is necessarily and uniformly to vacate the verdict and return a criminal defendant to the position he had been in prior to trial. While we agree that in certain cases an arrest of judgment does indeed have the effect of vacating the verdict, we find that in other situations an arrest of judgment serves only to withhold judgment on a valid verdict which remains intact. When judgment is arrested because of a fatal flaw which appears on the

face of the record, such as a substantive error on the indictment, the verdict itself is vacated and the state must seek a new indictment if it elects to proceed again against the defendant. However, we hold that when judgment is arrested on predicate felonies in a felony murder case to avoid a double jeopardy problem, the guilty verdicts on the underlying felonies remain on the docket and judgment can be entered if the conviction for the murder is later reversed on appeal, and the convictions on the predicate felonies are not disturbed upon appeal.

*State v. Pakulski*, 326 N.C. 434, 439–40, 390 S.E.2d 129, 131–32 (1990) (citations omitted).

Although our resolution of this appeal is not directly based upon principles of double jeopardy, we nevertheless believe that the above-quoted rule—applicable in such cases—applies with equal force here. Our holding that defendant could not be punished for habitual misdemeanor assault on the facts of this case is not the result of any fatal defect existing in the record. Rather, it is based on the effect of the prefatory language contained in the misdemeanor assault statute coupled with the fact that both of defendant's convictions arose from the same assaultive act. Accordingly, we agree that the Court of Appeals should have arrested the trial court's judgment for habitual misdemeanor assault rather than vacating the judgment.

## Conclusion

For the reasons set out above, we modify and affirm the decision of the Court of Appeals. We remand this case to the Court of Appeals for further remand to the trial court for further proceedings not inconsistent with this opinion.

MODIFIED AND AFFIRMED; REMANDED.